WESTBROOK *et al. v.* McCARTY *et al.*

(Division B. May 12, 1931.)

[134 So. 193. No. 29387.]

Wells, Jones, Wells & Lipscomb and **B. B. McClendon,** all of Jackson, for appellants.

**F. W. Bradshaw** and **Flowers, Brown & Hester,** all of Jackson, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellants, W. W. Westbrook, W. V. Westbrook and R. A. Westbrook, filed their bill against appellees, W. B. McCarty and Jitney-Jungle, Inc., a Delaware corporation, having its principal office in the city of Jackson, in said county, for discovery and the specific performance of a certain written contract, and damages for breach thereof, by the terms of which appellants were to manufacture fixtures for the Jitney-Jungle stores, and appel-

lee McCarty agreed to transfer to appellants one hundred shares of the capital stock of said corporation. There was an original bill, and an amendment thereto, to which appellees demurred. The court sustained the demurrer, and granted appellant an appeal to settle the principles of the cause. The original bill, leaving off the formal parts, follows:

"That theretofore, to-wit, on April 25, 1923, complainants and W. B. McCarty, acting for himself and Jitney-Jungle, Inc., then in the process of organization, entered into a certain written contract, a copy of which is attached hereto as Exhibit 'A' and made a part hereof.

"That by the terms of said contract there was to be delivered to complainants one hundred shares of the capital of Jitney-Jungle, Inc., from the block of stock owned by or to be delivered to W. B. McCarty when the incorporation of Jitney-Jungle, Inc., was completed, complainants being required by the terms of the contract to pay the four per cent assessment in the sum amounting to four hundred dollars when and if called, and complainants show that three calls of one hundred dollars each were duly made on the assessment and called by them.

"Complainants further show that prior to the making of the fourth call on the assessment of the stock, and after the one hundred shares of stock were due to be delivered to them, which delivery date was January 1, 1924, the defendant, W. B. McCarty, came to complainants and represented that he was not able to deliver the entire one hundred shares and that he was only able to deliver sixty shares, stating to complainants that there was a shortage of stock, therefore, it would be necessary for all persons to take a pro rata reduction on the stock to be delivered them. Complainants relied upon said representation as being true, and the said W. B. McCarty was the president of Jitney-Jungle, Inc., its chief organizer and thoroughly conversant with its status. Complainants received from the said W. B. McCarty stock certificates for sixty shares

of the stock, it being represented to them by the said McCarty that that was the amount due to be delivered to them under the pro rata reduction of all interests in the capital stock of Jitney-Jungle, Inc., but complainants now charge and aver that said representation was false and fraudulent and known to be such by the said McCarty at the time he made it.

"Complainants further show that the capital stock of Jitney-Jungle, Inc., is not listed on any stock market and is not really obtainable and, in fact, that it is almost impossible to buy the stock at any price, and complainants further show that the contract, Exhibit 'A' hereto, was not simply a contract for the purchase of stock but had a two-fold nature; first, complainants were to develop and manufacture, at the prices shown in said contract, fixtures for the Jitney-Jungle stores, which were then in their infancy, and the one hundred shares of stock were part of the consideration moving from the defendants to complainants to induce them to enter into the said manufacturing contract, as well as being in part payment for services theretofore rendered in and about the development of the fixtures system of the Jitney-Jungle stores.

"Complainants charge that the value of the forty shares of stock of Jitney-Jungle, Inc., is at this time some twelve or fifteen thousand dollars.

"Complainants further show that they stand ready and willing to pay the balance of the said four per cent assessment on the said forty shares of stock and here offer to do equity in this regard whenever the defendants will submit to them the statement of the amount due with the interest thereon.

"Complainants further show that the said contract was ratified by Jitney-Jungle, Inc., it having been made for its benefit, and that, acting thereunder, complainants proceeded to manufacture and deliver, in strict accordance with the terms of the contract, several sets of fixtures which defendants received, installed, paid for and used.

Complainants further show that they caused to be cut and stored many pieces of stock designed solely for the purpose of making the fixtures for Jitney-Jungle stores, which stock has virtually no other value, because it was dimension stock designed and cut for the purpose stated.

"Complainants further show to the court that after they had been operating under the said contract for a number of months, the defendant breached said contract without any lawful reason for so doing, by placing their orders for fixtures with other companies, notwithstanding that by the terms of the contract, 'Exhibit 'A.' hereto, complainants had a continuing contract for the manufacture and sale of said fixtures. Complainants further show that they performed their part of the contract and still stand ready, able and willing to perform under it.

"Complainants further show to the court that they do not know the number of fixtures so ordered from other companies, or persons, nor the prices paid for each, but charge that they are entitled to a discovery of the same from the defendants, as will be hereinafter prayed for.

"Complainants further show that they are entitled to a specific performance of the contract, Exhibit 'A' hereto, as to the forty shares of stock still due to be delivered to them, or in lieu of specific performance that they are entitled to a decree for the value of the stock, as will be hereinafter prayed for. That they do not have a plain, complete and adequate remedy at law.

"Complainants further show that they are entitled to recover in damages for the breach of the manufacturing contract to the extent of the profits on the fixtures bought by the defendants from other companies.

"Premises considered, complainants pray that the process of this court issue for defendants commanding them to appear before this court at the next regular term thereof, and then plead, answer or demur to this bill.

"Premises further considered, complainants pray as follows:

"A. That they be given a decree for specific performance of the contract, Exhibit 'A' hereto, and that the defendants be commanded to deliver to them forty shares of stock of the par value of one hundred dollars each of the capital stock of Jitney-Jungle, Inc.

"B. Complainants pray in the alternative that if specific performance be denied them, that they be given a decree against the defendants in the sum of fifteen thousand dollars, the value of the said forty shares of stock.

"C. Complainants pray that the defendants make discovery of the following facts:

"1. How many sets of store fixtures have been ordered to this date, by either W. B. McCarty or Jitney-Jungle, Inc., for use in Jitney-Jungle stores. 2. From whom ordered. 3. The price of each set of fixtures and dimensions. 4. The date of the order of each set.

"D. Complainants further pray that upon the hearing of this cause they be given a decree for such sum as the court may find is the reasonable and fair profit which would have accrued to complainants under their contract with defendants for the manufacture of the fixtures wrongfully ordered by defendants from other persons and companies.

"And if mistaken in the relief prayed for, complainants pray for such other, further and general relief as they may be entitled to in the premises."

Appellant amended their original bill as follows:

"Complainants further show that while the contract, Exhibit 'A' to the original bill and also made a part hereof, provided that complainants would sell fixtures to the purchasers of store rights from the defendants and that the true course of dealing with reference to the subject-matter of the contract, Exhibit A, was the following: The defendant would sell a store right to the purchaser who bought from defendants, or under their direction and control, all necessary fixtures for his store and defendants in turn would place their order with complain-

ants for their fixtures and complainants further aver that they at no time during the life of the contract between them and these defendants looked to the individual purchaser of the fixtures manufactured under said contract for, the placing of said orders or payment thereof.

"Further these complainants charge that the defendants have at no time allowed purchasers of store rights to buy their fixtures through any one save the defendants and that the defendants have at all times controlled the placement of the orders for said fixtures and generally sold said fixtures to the purchasers of store rights.

"Complainants further charge that the real intent and purpose of the contract between them and the defendants, Exhibit A, was not made for the benefit of the store right purchasers but was made for the benefit of these defendants.

"Complainants further charge that these defendants have placed their orders for store fixtures with other concerns in violation of their contract with complainants and have made it impossible for any store purchaser to buy fixtures from complainants under the terms of the contract even though it be construed as having been made for the benefit of third persons, as defendants dictated in their contracts where fixtures would be made, and complainants further charge that defendants owed them the duty of carrying out said contract and the further duty of not so acting as to interfere with the sale of the fixtures to the purchasers of store rights and the complainants further charge that the defendants have in all cases and at all times controlled the ordering of the store fixtures and that the purchasers of the store rights has had no part in the placing of the contract with them."

There was exhibited with the original bill a written contract, entered into on the 1st day of January, 1923, between W. B. McCarty, party of the first part, R. L. Crook, party of the second part, and Frank T. Scott and

J. N. Flowers, parties of the third part. The material provisions of the contract follow:

"1. The first party is the owner of a certain patent right covering a self-serving store arrangement covered by a patent carrying the original number 1,348,024, dated July 27, 1920, and is conveying the said patent right to the Jitney-Jungle, Inc., in exchange for stock of the said corporation in the aggregate amount of two thousand two hundred fifty shares.

"2. Of the said two thousand two hundred fifty shares of stock, the said first party is to cause one hundred shares of said stock to be issued to the said R. L. Crook, and to the said third parties four hundred fifty shares of the said stock, subject in both instances to the terms and conditions of this present agreement.

"3. The said third parties are to attend to the legal business of the corporation during the year 1923, and prosecute such cases as may arise during the year 1923, and to defend any suit against the corporation challenging the validity of the patent that may be filed, within three years from this date. The traveling expenses of said parties to be paid by the corporation.

"4. The first and second parties will devote their entire time during the year 1923 to the business of selling the patent rights above mentioned and establishing stores that will use the said self-serving arrangement under contracts with the Jitney-Jungle, Inc. Each of said parties shall be paid by the corporation weekly expenses not to exceed fifty dollars per week on an average. The said R. L. Crook shall be paid by the corporation one hundred dollars per month, and in addition thereto, he shall receive one-half of the cash consideration for the sale of any patent right that he may sell, the remaining half and whatever per cent of the gross sales that may be charged to go to the corporation. The said W. B. McCarty is to receive no salary, but he shall receive one-half of the cash consideration of any patent right that he may sell, the remaining half, and whatever per centum of the gross sales

that may be charged to go to the corporation. The amount to be paid in any instance for said patent right to be determined by the said W. B. McCarty and the said R. L. Crook, provided no patent or franchise right may ever be sold for less than one-half of one per centum of the gross sales of the purchasers, unless the board of directors of the said corporation shall first approve. It is understood that this arrangement with the said W. B. McCarty and the said R. L. Crook with reference to their compensation is for the year 1923.

"5. The several parties to whom the stock shall be issued shall be severally bound for the payment of four per cent thereof into the corporation for the purpose of defraying the expenses of operation during the year 1923, such payment to be made when and as needed for that purpose and when called upon so to do by the board of directors.

"6. All the stock issued the said Flowers and Scott, except two shares thereof, shall be placed and held under the escrow agreement hereinafter defined, and all the stock issued to the said R. L. Crook, except one share shall be placed and held, and all of the other stock except eight shares thereof, shall be so placed and held in escrow, as provided by the next succeeding paragraph thereof.

"7. The stock to be placed and held in escrow shall be placed with the Merchants Bank & Trust Company of Jackson, Mississippi, accompanied by a copy of this agreement, and shall be held by the said bank until January 1, 1924, unless the board of directors of the Jitney-Jungle, Inc., and the parties to this agreement shall join in the request to cancel the said arrangement, the purpose of this escrow agreement being to hold the said stock together pending the execution on the part of each of the parties hereto of his agreement as evidenced by this present agreement, it being the idea of the parties hereto that the value of the said stock is to be created in a large way by the performance on the part of the parties hereto

of their several undertakings during the year 1923. This contract is subject to the approval and adoption of Jitney-Jungle, Inc.''

There was also exhibited with the bill a written contract entered into the 25th day of April, 1923, between appellee W. B. McCarty, party of the first part, and appellant, partners doing business under the name of the Westbrook Manufacturing Company, parties of the second part. This contract first recites in full the above contract between appellee McCarty, Crook, Scott, and Flowers. Then follow these provisions:

''1. That the said party of the first part is to cause one hundred shares of his stock received by him for his patent to be issued to parties of the second part, the parties of the second part agreeing to pay the four per cent provided for in section 5 of the above mentioned agreement, under the conditions mentioned in said instrument.

''2. The parties of the second part, on their part, agree to make the fixtures for the Jitney-Jungle Stores mentioned in the above agreement, for the purchasers of said rights, on the terms mentioned below. They agree to make and have ready for delivery each order for said fixtures within thirty days after receipt of said order; provided that no more than twenty orders are on file in process of manufacture at any one time. In the event that there are more than twenty orders at any one time, the excess of twenty orders will be completed within a reasonable time. They further agree to expend and increase their facilities for manufacturing and getting ready for delivery of said fixtures as the increase in the demand for said fixtures makes necessary.

''3. Parties of the second part agree to make said fixtures for the following prices:

| | |
|---|---|
| Size 18x47, price | $1335.88 |
| Size 24x50, price | 1792.00 |
| Size 26x50, price | 1798.00 |
| Size 28x50, price | 1806.00 |

—the said fixtures to be finished in oak and to be completed as heretofore furnished for the Jitney-Jungle Stores. It is understood that these prices are based on the present market of material and labor and are subject to revision upward or downward according to the fluctuation of the market and manufacturing cost.

"4. Parties of the second part agree to put forth their best effort in manufacturing these fixtures to the end that all necessary improvements in the manufacture thereof be made and that they be made as cheaply as possible so that the sale of the said rights may be enhanced.

"5. It is understood that the said one hundred shares of stock are to be held in escrow as provided for in section seven of the above mentioned agreement, and under all the conditions mentioned in said above mentioned agreement."

It is the latter contract of which appellants seek the specific performance, and recovery of damages for breach thereof by appellees, and discovery.

It will be observed that appellants allege in their bill, as amended, that, although appellee Jitney-Jungle, Inc., was not a party to the contract, nevertheless it was made for and on behalf of that corporation, and was by it accepted and acted on. The contract, by its terms did not obligate appellants to manufacture fixtures for appellee the Jitney-Jungles Corporation, but to manufacture them (to use the language of the contract) "for the purchasers of said rights."

But, conceding that the contract obligated appellants to manufacture the fixtures for the appellee Jitney-Jungle Corporation, as required by the purchasers from it of store rights, and obligated the corporation to pay appellee the prices therefor as provided in the contract, still we are of opinion that under the law the contract was terminable at the pleasure of either party, because there was no time limit therein provided for the furnishing

of the fixtures. It will be observed, on reading the contract, that there is no provision, expressed or implied, for its termination. Where there is no time limit in a contract for the furnishing of commodities, the contract is terminable by either party on reasonable notice, and no cause therefor need be assigned. 13 C. J., p. 605, par. 630. Among numerous decisions cited in notes in Corpus Juris to sustain that principle is Echols v. New Orleans, J. & G. N. R. Co., 52 Miss. 610. That case involved a contract to supply cordwood to a railroad company, without fixing the time limit for its termination. The court held that perpetual contracts of this character would not be enforced, because of imposing a never-ending burden; that an agreement to furnish a particular commodity at a specified price, without a time limit, would be construed either as terminable at pleasure or implying that the thing to be done should be performed within a reasonable time; that any other theory was a moral and practical impossibility, and, if indulged in by the court, could not be enforced in the ordinary concerns of life.

According to the allegations of appellants' bill, the contract was for some time carried out by the parties, before it was breached by appellees. Applying the principle that a pleading is to be construed more strongly against the pleader, it is to be inferred that appellees gave appellants reasonable notice that they would not further abide by the contract.

A fair interpretation of the contract is that the transfer of the one hundred shares of stock to appellants was the consideration moving to them for the expense they were required to incur in preparing for the manufacture of the fixtures.

It follows from these views that the chancellor did not err in sustaining the demurrer to the bill, in so far as specific performance was sought to enforce the contract providing for the manufacture by appellants of the store fixtures and damages for a breach thereof.

We are of opinion, however, that on the other feature of the case the bill states a good cause of action against appellee McCarty. It is charged that he agreed to transfer to appellant one hundred shares of the capital stock of the Jitney-Jungle, Inc., and breached the contract, in that he only transferred to appellant sixty shares of said stock, and refused to transfer the balance of forty shares. This one hundred shares of stock was to be placed in escrow with the Merchants' Bank & Trust Company, and delivered to appellants as provided for in the contract. As we understand the allegations of the bill, only sixty shares of the stock was put up in escrow, instead of one hundred shares as agreed.

There is a somewhat indefinite intimation in the record that the entire capital stock of the Jitney-Jungle, Inc., was decreased forty per cent. If that be true, appellants suffered no loss because of appellee McCarty's failure to have transferred to them one hundred shares of the stock, instead of sixty shares. If such decrease was made in the entire capital stock of the company, of course, sixty shares of the decreased stock would be as valuable as one hundred shares of the original stocks.

Affirmed in part, reversed in part, and remanded.