(Division B. Feb. 15, 1932.)

[139 So. 622. No. 29831.]

HASTINGS-STOUT Co. *v.* J. L. WALKER & Co.

**Loving & Loving**, and **J. W. Loving**, all of Columbus, for appellant.

John H. Holloman and Wm. P. Stribling, both of Columbus, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, a corporation, was and is engaged in the wholesale grocery business at Columbus in this state. On August 14, 1929, appellee mailed to appellant corporation, at Cairo, Illinois, the following letter: "We thank you for your wire offering No. 2 white oats at fifty-five and three-fourths cents immediate or fifteen day shipment. We are enclosing a wire from Samuel Hastings offering No. 2 white oats at fifty-five and one-half cents. If you want to meet this price, you may book us ten cars of three hundred sacks each to be ordered out as needed. If the market should open lower prices tomorrow, presume you will give us benefit of it. Please wire us confirmation." On the next day, on the receipt of said letter, appellant wired a so-called confirmation, and, at the same time, mailed to appellee a letter of confirmation reading: "This confirms the sale to you by wire of direct as follows: Cars ten, Packages three hundred, size one hundred sixty, Grade and Kind, No. 2 white oats Bleached, Price fifty-five and one-fourth cents. Immediate or fifteen days one-fourth cents per bushel carrying charge every week or fraction. Basis delivered, Columbus, Mississippi. To be shipped thereafter." No specific reply was made by appellee to this so-called letter of confirmation, but in a few days appellee ordered shipped, and there were shipped by appellant in response thereto, several hundred sacks of oats; similarly there were ordered and shipped in October, 1929, in January, 1930, and in February, 1930, several hundred sacks. The communications from appellee to appellant under which the August and October, 1929, shipments were made are not in the record, but the letter for the January, 1930, shipment is as follows: "Hastings Stout Co., Cairo, Illinois, Gentlemen: Please ship us immediately to apply on our contract one hundred fifty sacks No. 2 white oats,

fifty sacks special white, fifty sacks mixed oats. Yours truly, J. L. Walker & Co."

On February 28, 1930, appellee wrote appellant as follows: "Please ship us immediately one hundred fifty sacks No. 2 white oats, one hundred sacks special white oats. Please ship this car at market price, giving us the benefit of lowest price possible. Advise us how many cars we have left on contract and advise us on what basis you would be willing to cancel out balance due us." The reply made by appellant to the foregoing letter is not of record, but on March 15, 1930, appellant wrote appellee as follows: "What have you decided to do about handling the remainder of oats due you on contract? The market has had some decline since we wrote you recently, and from present indications it does not appear that there will be any improvement in prices. Today's market for No. 2 bleached white oats in new five bushel sacks delivered Columbus is fifty-two and three-fourths cents per bushel. As stated in our letter to you of the first inst., we much prefer to fill the remainder of the contract as we have the oats in stock and will have to resell them if you do not order them out, but if you prefer you may remit to us the difference between the contract price, plus carrying charges, and market price and we will cancel the remainder of the contract. Owing to the fact that we are making some changes in the personnel of the Hastings-Stout Co. this month, we are very anxious to secure some definite information as to how you want to handle your contract with us, and will appreciate this information at your earliest convenience."

To this letter appellee responded with the following letter, dated March 17, 1930: "We acknowledge receipt of yours of the 15th and are pleased to advise that it is our intention to use the balance of our contract on oats." Thereafter there was one further order, which was shipped on April 8, 1930, and this was the last order

which was given by appellee. Nothing further appear of record of the correspondence between the parties until May 26, 1931, when appellant wrote to appellee as follows: "Referring to our letter to you of May 12, 1931, relative to your order of August 15, 1929, will state that we have not received shipping instructions on the unshipped portion of this order amounting to eight thousand seven hundred and fifteen bushels of No. 2 white oats, and more than a reasonable time having elapsed for these goods to be ordered out, we hereby notify you that we have this day cancelled the said order on account of your breach thereof, and your not ordering the goods shipped within a reasonable time in accordance with the said order, and we are herewith billing you for the carrying charges on these oats at one-fourth cents per bushel per week or fraction thereof for ninety-one (91) weeks, amounting to the sum of one thousand nine hundred eighty-two dollars and sixty-six cents, and are also for the loss in price of the said order, being the difference in price of such oats on May 26, 1931, and the contract price of fifty-five and one-fourth cents per bushel on the unshipped eight thousand seven hundred and fifteen bushels, amounting to fifteen cents per bushel, and amounting to a loss on the said oats of one thousand three hundred seven dollars and twenty-five cents which together with the carrying charges of one thousand nine hundred eighty-two dollars and sixty-six cents amounts to the aggregate sum of three thousand two hundred eighty-nine dollars and ninety-one cents, which you owe us on account thereof and for which we herewith hand you bill. We are further advising you that if you do not remit us with this amount with ten (10) days that we shall enter suit in accordance with the above, for loss in connection with this transaction."

No response to this letter was made by appellee, and thereafter, on July 4, 1931, appellant's declaration was filed in the circuit court, setting up in detail the facts

above reflected, and which followed the general theory maintained in the letter last quoted. Appellee demurred to the declaration, the demurrer was sustained and the action was dismissed.

It is the main contention of appellee that, inasmuch as appellant's letter of comfirmation, of date August 15, 1929, contained new and additional terms, varying from those proposed in the letter from appellee to appellant on August 14, 1929, there was no meeting of the minds upon identical terms, and therefore there was no contract. This would be true if nothing further had been done after the receipt by appellee of the so-called confirmation containing the new and additional terms, for the latter would have been no more than a new offer, and, until accepted, would have had no legal effect. If, however, upon the receipt of the so-called confirmation, appellee had written appellant accepting the terms thereof, there is, of course, no doubt that thereby a mutual and binding contract would have been made. Assent or acceptance may be expressed by acts as well as by words; and the authorities are in substantial accord that when the buyer, upon receipt of the seller's last proposal, makes no counter proposal, the action by the buyer in then ordering shipment, and the delivery by the seller of goods, then due to be delivered, under the seller's offer, is tantamount to an acceptance by the buyer of the terms proposed by the seller, and thereupon both parties are bound by those terms. Many of the cases on this subject are found in the footnotes of 55 C. J. 94 et seq., and a case directly in point is King v. Ryan, 179 Minn. 385, 229 N. W. 348, and see Trigg v. Emmett Shaw Co., 9 Ga. App. 358, 360, 71 S. E. 679. Attention is called also, in this connection, to the three letters from appellee in which it uses language in recognition of the existence of "our contract." The contention of appellee in the respect aforesaid is therefore not sustainable; and what has been said disposes also of the point made by

appellee that the statute of frauds is involved, for the declaration sufficiently avers that shipments or deliveries were made under the several installment orders of appellee.

Appellee contends also that the contract is unenforceable, because there is no time limit fixed therein for its termination; and appellee cites Westbrook v. McCarty, 160 Miss. 455, 134 So. 193, in support of this argument. The contention would be serious if the contract provided for no specific quantity as was the alleged contract in the Westbrook v. McCarty case. But in the case here in hand the quantity covered by the contract was definitely specified; and a fair interpretation of the contract is that this specific quantity should be ordered out in installments, and that the contract should be completed within a reasonable time, Burroughs v. Gilliland, 90 Miss. 127, 43 So. 301, 13 C. J. 683, and according to the reasonable requirements of the established business of the purchaser in respect to the commodity which was the subject of the contract. Applicable authorities covering this question are grouped in the annotations 14 A. L. R. 1300-1322, and 24 A. L. R. 1352-1359, and cases will be found in said annotations bearing also upon the point of the acceptance of the seller's offer by the ordering of the goods thereunder. This question of a reasonable time for the performance of the contract is one to be determined by the jury, under all the pertinent facts and surrounding circumstances, which facts and circumstances should be placed fully before the jury under proper instructions. 13 C. J. 685, first sentence section 782, and authorities under note 26. And just here we may mention that we do not hold that appellant is entitled to recover as of the date May 26, 1931, and to take the market conditions of that approximate date as a basis of damages, or that the carrying charges could be calculated forward to any such a late date as that. This was more

than a year after the letter written by appellee on March 15, 1930, to the effect that appellee expected "to use the balance of our contract on oats." The calculations on these two features could not in any event run beyond a reasonable time from the latter date; and all this as we have said is a matter to be determined by the jury under proper instructions.

Nevertheless, the declaration stated a cause of action, and the fact that the recovery may not be of the full amount demanded, or of the particular amount or amounts or in accordance with the particular method of calculation proposed in the declaration, does not open the declaration to a general demurrer. If the plaintiff is entitled to recover any amount, under the facts or any sufficient part of the facts stated in its declaration, a demurrer will not lie. 49 C. J. 429; Board v. Railroad Co., 71 Miss. 500, 14 So. 445.

The demurrer attempted to raise the point, as one among its causes, that the language of the declaration is vague, indefinite, and ambiguous. Special demurrers are abolished in actions at law, section 553, Code 1930; and it is provided by section 521, Code 1930, that, if the declaration "contains sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient." The remedy in respect to uncertainty and the like is found in sections 554 and 555, Code 1930. Where the declaration shows, though in a general way, a cause of action, but the allegations are indefinite or uncertain so that the precise nature of the complainant is not apparent, the remedy is not by demurrer, but by motion, under the sections of the statutes last cited. Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155.

Reversed and remanded.