RHYNE, et al. *v.* GAMMIL.

Oct. 6, 1952

No. 38472          2 Adv. S. 36          60 So. 2d 500

*Creekmore & Beacham,* for appellants.

*Watkins, Edwards & Ludlam,* for appellee.

ALEXANDER, J.

Pursuant to prior negotiations, appellants purchased from appellee the business known as The Major Chemical Company. Upon the ground that the financial condition of the business was not as had been represented, appellants filed their bill praying in the alternative for rescission, reformation or for a money decree based upon the difference between the amount of accounts payable as represented and as later disclosed. At the close of complainants' testimony, a motion to exclude the evidence was granted and the bill dismissed. From this decree the appeal is taken.

(Hn 1) We therefore take the testimony favorable to complainants in adjudging whether a prima facie case of misrepresentation had been made out.

The controlling issue involves the alleged discrepancy in the accounts payable and the effective date of the sale. Appellants were to pay $4,000 in cash, assume a note of the appellee in the amount of $3,800, with accrued interest. Gammil, in addition to other concessions was to retain the bank balance of the company not to exceed $1,000.

The negotiations reached agreement on December 27, 1950. According to Rhyne, the accounts payable and receivable, as well as inventory, were computed from the files or records of the company by its bookkeeper.

This memorandum is in the following language:

"The Major Chemical Company
   "As of December 27th
"Accounts Payable ........................................................................$3,189.80
"Accounts Receivable ........:................................................ 5,442.96
"Approx—inventory ............................................................ 4,500.00"

At the time of its preparation, Gammil was present and verified the figures. Rhyne overlooked its preparation, item by item. A contract was prepared on December 29th by an attorney for Gammil in the presence of him and Rhyne. This contract is in the form of a bill of sale which did not set out the amount of accounts receivable or payable but conveyed "all inventory, all accounts receivable, all furniture, fixtures and equipment, and generally without limitation all other property owned by the operation known as The Major Chemical Company, as will be disclosed by the books and records of the operation." There is therefore not involved the doctrine of a merger of prior inconsistent terms into a written contract, or any attempt to vary such contract by parol testimony. The consideration was as stated above. This bill of sale was, by agreement, dated December 30th, the last day of the year, only for the purpose of simplyfying the matter of taxation.

Since between the 27th and 30th of December Gammil collected $1,286.54 of the accounts receivable, the effective date of the sale becomes important. Although Gammil testified that these bills were collected "during the last week preceding the first of the year" he asserted that he did not collect any accounts after the deal was closed. However, this statement must be viewed as his interpretation of the effective date of the sale. An auditor testified that the collections were entered on the books of the company between December 27th and 30th. Although the exact date of their collection could not be stated by him, he further testified that some of the items were invoiced on the 27th. In this connection, the sworn answer of Gammil is pertinent in its averment that "this agreement was entered into prior to Decem-

ber 27th, 1950, but the bill of sale was not signed by defendant and complainants until December 30th.''

While the decree did not resolve any factual issue as to the effective date of sale, the above testimony is relevant in deciding this point as a matter of law. There was testimony as to the payment by appellee of the sum of $200· as a result of complaints by the purchasers regarding these collections. Whether this was accepted in full satisfaction of the total amount collected was not decided, and we mention it only for its evidential value as supporting the contention of appellants that the date of sale was the 27th and that Gammil knew this. In any event, its decision would not furnish a key to the entire controversy.

It was not disputed that the amount of bills payable amounted approximately to $6,200. While it is not made clear whether such condition existed on the 27th, Gammil testified that such was the situation ''as of the first of the year.'' There is no testimony that appellants purchased any goods until after the first of the year 1951, so that it is a safe assumption that the liability for goods sold had theretofore been incurred by Gammil prior to the 30th. It is at least unlikely that any of such accounts were incurred after December 27th since there had been reached an agreement to sell on that date.

The complaint, then, is focused upon the alleged misrepresentation of the amount of accounts payable, the discrepancy being computed as the difference between the statement furnished appellants showing $3,189.80 and the disclosures revealing the sum of $6,200.

There is no dispute as to the consideration to be paid by appellants. This at least was agreed upon by the parties on or before December 27th, since the intervening delay in putting the agreement into writing was caused by factors other than the consideration to be paid. Moreover, the bill of sale confirmed such terms. There is left therefore only the issue whether the memorandum furnished to appellants constituted a representation as to

the amount of accounts payable to be assumed by appellants. **(Hn 2)** An offer and acceptance may be expressed by acts as well as by words. Hastings-Stout Company v. J. L. Walker Company, 162 Miss. 275, 139 So. 622. Here, there were, according to complainants' testimony, both acts and words.

If the representation that the accounts payable as of December 27th were $3,189.80 was true, it follows that either additional accounts in an amount exceeding $3,000 were incurred by Gammil on December 28th or 29th or the statement was false. There should be no doubt that the contract was finally executed on the 29th. Its dating on the following day may not be held to extend the time during which Gammil could order goods, reduce inventory or collect accounts. **(Hn 3)** The transaction was closed either upon the 27th or the 29th. There is ample support in fact and in law that the former date controls, though in the matter as here presented we may not and do not find any facts, but appraise the testimony to adjudge its prima facie quality.

**(Hn 4)** In this connection, the principle is invoked that the complainants must prove misrepresentation by evidence that is clear and convincing. Such is the rule. However, **(Hn 5)** since the testimony that the statement was made in Gammil's presence by his secretary and bookkeeper and that the actual condition was otherwise than therein stated is not denied, the proof attains the degree required. Other testimony supports these facts which are not positively denied by Gammil. The latter unquestionably knew that during the interim between the 27th and the 29th appellants were not informed of any change in the financial condition of the company and were resting upon the assurances made in the financial statement. The brief delay in crystallizing the agreement into writing did not change its terms but only revealed them. Had the agreement been inchoate, appellants would have been compelled to make daily or hourly audit of con-

tinuing transactions lest their purchased assets be dissipated or their obligations covertly enlarged. What they were to receive underwent substantial change due to collections by appellee of accounts due, and the error in the outstanding obligations. The amount they were to pay did not change. Appellee held them to their agreement. He knew that appellants had not been led by suspicion or vigilance to test the fixity of the statement as given.

**(Hn 6)** This representation need not be deliberate or willful. It is enough that it be made with an inexcusable disregard of its accuracy, and **(Hn 7)** where all the facts are in the possession of the person making the representation he may not shift the burden of verification upon one who he knows is acting upon his representation. **(Hn 8)** Of course the representation must be the inducing cause of the sale and result in loss. There is hardly space in the record for doubt that the consideration to be paid by appellants took into account the terms of the representation. Appellants may have been too trustful; they may have been unbusinesslike; yet it is in such circumstances that misrepresentation uncovers its most ready victims. **(Hn 9)** It need not be intimated that appellee was purposefully defrauding appellants. He also may have been careless, but it was his duty to be careful, and his was the power and duty accurately to represent the facts.

We are of the opinion that the motion to exclude the evidence of complainants ought to have been overruled. It may be conceded that some testimony is conflicting but this forms issues to be resolved upon a hearing of the whole case. The matter should be developed upon its merits which should include a finding as to the effective date of the agreement. Bullard v. Citizens Nat'l Bank, 162 Miss. 450, 160 So. 280, 162 So. 169. See also Partee v. Pepple, 197 Miss. 487, 20 So. 2d 73.

Reversed and remanded.

*Roberds, P. J., Kyle, Holmes* and *Ethridge, JJ.,* concur.