UNITED STATES FINANCE COMPANY, INC., ETC. *v.* BARBER

No. 42782 November 4, 1963 157 So. 2d 394

*Alexander, Herring & Crews,* Jackson, for appellant.

*Travis, McKee & Franck,* Jackson, for appellee.

ETHRIDGE, J.

This is a suit for damages for breach of contract, based upon a contract for personal services and furnishing of commodities. It was brought in the Chancery Court of Hinds County by Luther T. Barber, appellee, against United States Finance Company, Inc., which formerly and during the period in question was United States Shell Homes, Inc. (called Shell Homes). After a lengthy hearing, the trial court rendered a decree awarding Barber damages of $5,000. Shell Homes has taken a direct appeal, contending the contract was invalid, and Barber has taken a cross appeal, asserting he was entitled to more damages.

The issues are concerned with whether the contract was within the statute of frauds as to agreements not to be performed within fifteen months; the effect on that question of failure to specify its duration in the agreement for personal services and furnishing commodities; whether it was therefore terminable at the will of either party; and if so, the time when notice of rescission became effective. We affirm the decree of the chancery court.

Shell Homes was in the business (in Mississippi, Louisiana, Alabama and other states) of constructing for the public shell homes, which are unfinished, low-cost residential construction. Barber was an electrician, and operated a small business known as Barber Electric Company. In January 1961 Shell Homes decided to obtain bids on the costs of doing electrical wiring in the different types of homes sold by it, in order to stabilize

its expenses. One of its representatives suggested to Barber that he submit a price list on wiring the homes, and, pursuant to such submission, in the last half of January 1961 Shell Homes and Barber entered into a written agreement. It was executed by both parties, and was in these terms:

### ELECTRICAL CONTRACT BETWEEN BARBER ELECTRIC CO. AND U.S. SHELL HOMES, INC.

It is agreed that all electrical work sold by U. S. Shell Homes, Inc. in the states of Mississippi, Louisiana, and Alabama is to be done by Barber Electric Company of Jackson, Mississippi — with the exception of homes sold out of the Tupelo, Mississippi office.

Materials to be used is as follows:

Two Bedroom home_____21 outlets
Three Bedroom home_____24 outlets
Four Bedroom home_____28 outlets

All service shall be size #6 — with 4 circuit 3 breaker panel and a set of standard fixtures in each home.

Any extra requirements by any power company will be paid by the home owner at the time the wiring is done.

Barber Electric Company will furnish material and labor for the homes mentioned above for the prices listed below:

Two Bedroom home_____$125.00
Three Bedroom home_____$135.00
Four Bedroom home_____$145.00

It is agreed that U. S. Shell Homes, Inc. will furnish purchase order and job numbers and exact directions to job location to Barber Electric Co. for each home as soon as the sale has been approved.

The above prices apply ONLY to standard wiring jobs sold OUTSIDE city limits.

All work guaranteed to U. S. Shell Homes, Inc. for one year.

Barber Electric Company will do wiring work within 7 days from notation of job. After seven days there will be extra $20.00 first day and $5.00 each additional day. This is covered by Policy Number 302918.

It will be noted this contract did not provide a period of duration for furnishing the services and materials. It covered "roughed-in" wiring in shell homes, but did not cover "laid-on-floor" kits and "give-away" kits. Apparently most of the homes used "roughed-in" wiring jobs, but there was an oral agreement between Barber and Shell Homes as to what he would be paid for furnishing the other two types of wiring, generally without any installation.

After execution of the contract, Shell Homes turned over to Barber the wiring jobs on the number of homes, which he fully performed in a satisfactory manner. In February 1961 Barber was in an automobile collision, and was laid up in the hospital on different occasions for a total of three weeks. He had assistants working for him. He was paid for most of this work, but Shell Homes admitted it still owed Barber $715. The trial court was warranted in finding that, in reliance upon this agreement, Barber made numerous arrangements to handle appellant's work, including the turning down of other jobs that were offered to him by other parties. The work assigned him ceased on April 26, 1961. After that Shell Homes continued to sell units upon which Barber could have done the wiring under the contract, but the company did not refer this work to him. After that date Barber was not given any work by Shell Homes, and in response to his inquiries, agents of appellant told him they were not selling anything. This was a misrepresentation.

Shell Homes never gave Barber any actual notice that they considered the contract terminated until June 13, 1962, on which date Shell Homes filed its answer to Barber's bill of complaint. Beginning late in the summer of 1961 Barber Began doing other work, since he had not received any wiring jobs from Shell Homes. He mitigated his damages up to June 1962 to the extent of $8,371.

The chancery court found that the contract was duly executed. It called for "all electrical work" in shell homes, sold by the company in Mississippi, Louisiana and Alabama, to be done by Barber, with the exception of those sold from the Tupelo office. The written contract covered "roughed-in" wiring, and the parties had an oral agreement covering "laid-on-floor" kits and "give-away" kits. Barber did the work assigned him in a satisfactory manner. Through a management decision, Shell Homes on June 23, 1961 decided not to use Barber any more, this was communicated to defendant's counsel, "but there was no notice of any kind given to the party to the contract, Mr. Barber, that his services were no longer needed and that the contract was being terminated." Barber had to find this out by subsequent actions of the defendant. In effect, the trial court held that the contract was terminated by notice to Barber on the date defendant filed its answer to the bill of complaint, June 13, 1962. The period of the contract was from January 1961 to June 13, 1962. Defendant admitted it owed Barber $715, and the awarded damages of $5,000 included that sum. The court stated that this was the "best figure that the court can arrive at under the evidence." From that decree Shell Homes took a direct appeal, and Barber a cross appeal.

The evidence warranted the trial court in finding that Shell Homes executed the written contract with Barber in the latter part of January, 1961; that Shell Homes agreed that "all electrical work" sold by it in the three

states was to be done by Barber, except that sold out of Tupelo; that the schedule of prices stated in the written contract pertained to "roughed-in" wiring; and that the parties had separate oral agreements as to price schedules for "laid-on-floor" electrical kits and "give-away" electrical kits.

The contract was for personal services and furnishing commodities, and did not mention its period or duration. Such an agreement which does not specify its duration is ordinarily construed as one that is terminable at will. 12 Am. Jur., Contracts, § 305. In Westbrook v. McCarty, 160 Miss. 455, 469, 134 So. 193 (1931), there was a contract for furnishing commodities without a time limit. The court held that with no fixed period "the contract is terminable by either party on reasonable notice, and no cause therefore need be assigned." Echols v. New Orleans J. & G. N. RR. Co., 52 Miss. 610 (1876); cf. Hastings-Stout Co. v. J. L. Walker & Co., 162 Miss. 275, 284, 139 So. 622 (1932) (where quantity of commodity was specified by contract, court implied reasonable time, not terminable at will).

In brief, a contract for an indefinite period, such as one for employment or other performance that is to begin within fifteen months, which by its nature is not deemed to be perpetual, may be terminated at any time on giving reasonable notice. 2 Corbin, Contracts (1950), § 446; 17A C.J.S., Contracts, § 398. The contract between Shell Homes and Barber was for an indefinite period, and was terminable at any time by either party, upon giving reasonable notice.

The statute of frauds provides that an action shall not be brought to charge a defendant "upon any agreement which is not to be performed within the space of fifteen months from the making thereof," unless the agreement or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith. Miss. Code 1942, Rec., § 264(d). Appellant

argues that the contract was not a sufficient memorandum of the agreement to satisfy the statute of frauds, but this is not an issue because the contract was not within the statute of frauds.

Contracts of present employment and of indefinite duration generally are held not to be within the meaning of this statute requiring contracts not to be performed within fifteen months to be in writing, since such contracts are terminable at any time by the parties, and are therefore susceptible of performance within a year from the time of their inception. The possibility of performance within the fifteen months takes the contract out of the operation of the statute. 2 Corbin, Contracts (1950), § 446; 3 Williston Contracts (3d ed. 1960, Jaegar), § 495. This rule is particularly applicable to contracts of employment. 49 Am. Jur., Statute of Frauds, § 51. Contracts for personal services for an indefinite time are deemed possible of performance within fifteen months from their formation, since, for example, the employee may die within that period. *Ibid.*, § § 58, 30. The phrase "not to be performed" contains negative words, and, accordingly, to bring a particular contract within the statute, there must be a negation of the right to perform it within fifteen months. 37 C.J.S., Statute of Frauds, § 42. Hence the Barber contract was not within the statute of frauds. *Ibid.*, § § 50, 62; Duff v. Snider, 54 Miss. 245 (1876); Boggan v. Scruggs, 200 Miss. 747, 29 So. 2d 86 (1947); cf. Gerachi v. Sherwin-Williams, 156 Miss. 36, 125 So. 410 (1930), distinguished in 2 Corbin, § 446; Edwards & Sons v. Farve, 110 Miss. 864, 71 So. 12 (1916), distinguished in 3 Williston, § 495.

The chancery court held there was no adequate notice to Barber of Shell Homes' intention to rescind the contract until appellant filed its original answer in this cause on June 13, 1962. Appellant asserts that Barber's original bill of complaint charged appellant

refused him work and advised him they were not selling any houses on April 26, 1961; and that as of that time Barber received adequate implied notice of termination of the contract by Shell Homes. However, the chancellor was warranted in finding to the contrary, and in adjudicating that there was no valid termination of the contract until June 13, 1962.

A notice for the rescission or termination of a contract "must be clear and unambiguous, conveying an unquestionable purpose to insist on the cancellation." 12 Am. Jur., Contracts, § 446, p. 1029. To effect a rescission, an affirmative act on the part of the person desiring to rescind is necessary. Although notice of rescission need not consist of a formal written notice, the declaration or acts constituting rescission must be definite and unequivocal and clearly indicate the right asserted. 17A C.J.S., Contracts, § 435. Here the termination was without notice and with affirmative misrepresentations on the part of appellant indicating the contract was still in existence.

Certainly appellant's acts and declarations were not definite and unequivocal, did not clearly indicate the right asserted and claimed of rescission, and were not clear and unambiguous, conveying an unquestionable purpose to insist on the cancellation. In Westbrook v. McCarty, 160 Miss. 465, 134 So. 193 (1931), the rescinding party advised the other that he could not make delivery of the stock in the quantities proposed, and further, under the pleadings the court found adequate notice. *Westbrook* is not applicable to the present facts. Essentially, the time of notice of termination here was a question of fact for the chancery court, which could have found, but did not, an earlier date. We cannot say that the court was manifestly wrong in fixing the date of effective rescission when it did.

In summary, on the direct appeal of United States Finance Company, Inc., formerly United States Shell

Homes, Inc., the judgment is affirmed. Barber has cross appealed, contending that the trial court erred in refusing to award him damages of $10,874.57, instead of the $5,000 actually granted.

 ■ Profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty. 15 Am. Jur., Damages, § 151. Damages in the instant case were unliquidated, not liquidated. The evidence concerning them in this instance is not a matter of simple mathematical calculation. The court had the right to appraise numerous factors, including Barber's performance under the contract, his difficulties concerning personnel and financing, and exaggerations of estimated profits. Considering all of the circumstances, the trial court was justified in limiting the award of damages. Hence on the cross appeal the judgment also is affirmed.

Affirmed on both direct and cross appeals.

*Lee, P. J., and Kyle, Rodgers and Jones, JJ.,* concur.