433 So.2d 946 (1983)
FIRST MISSISSIPPI BANK OF COMMERCE
v.
Ray LATCH, d/b/a Waterway Construction Co.
No. 53772.
Supreme Court of Mississippi.
May 25, 1983.
Rehearing Denied July 13, 1983.
Price, Krohn & McLemore, James E. Price, Corinth, for appellant.
James H. Mathis, Corinth, for appellee.
Before BROOM, P.J., and HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Alcorn County wherein First Mississippi Bank of Commerce (FMBC), plaintiff/appellant, instituted legal proceedings to collect on several promissory notes executed by Ray Latch, individually, and Ray Latch d/b/a Waterway Construction Company (Latch), defendant/appellee.[1] Latch, by way of counterclaim, sought recovery from FMBC for its alleged breach of an oral agreement to extend a line of credit in the amount of $50,000 to his business. Latch alleged that FMBC's failure to extend this *947 credit resulted in his inability to complete a contract with the Corps of Engineers as well as the repossession of various items of equipment used in his business. Latch admitted his indebtedness to FMBC for the amounts alleged. At the conclusion of the trial, the jury returned a verdict in favor of Latch and assessed his damages at $81,000. From this amount a $30,076.84 set-off was ordered representing principal and interest owed to FMBC by Latch. Judgment was therefore entered for Latch in the amount of $50,925.16. FMBC has appealed to this Court from the verdict of the jury and judgment thereon. We reverse in part and remand.
Appellee was the owner and operator of a successful grocery business in Corinth in 1975. In the spring of that year the Hickmans (appellee's father-in-law and brother-in-law) approached him about borrowing $9,000 to complete a construction job for the Soil Conservation Service. After the job was completed, appellee participated in the profits which were reaped therefrom.
Following the successful completion of this job, appellee agreed to go into business with the Hickmans under the name of Waterway Construction Company. Although appellee had no experience in the earth-moving business, he did have a good credit standing which the Hickmans sorely lacked. After striking their agreement, appellee went to FMBC where he met with Bill Tidwell. During their discussions, appellee informed Tidwell that the partnership would require the purchase of some new equipment so as to be able to bid on certain jobs and that during slack periods they would also need financial help to stay operational. At the conclusion of their meeting, Tidwell orally agreed to loan appellee up to $50,000 at 10% interest. It was agreed that on small loans all that would be required was appellee's signature while on the larger contractual jobs which were bonded, FMBC would receive an assignment of the proceeds under the job. Each note would be for a period of 6 months with an option to renew for an additional six months.
Appellee was asked to open a business checking account at FMBC from which FMBC had permission to apply the funds therein to any notes coming due. Appellee and Hickman also opened a personal checking account at the bank. Following their meeting, Tidwell sent a letter dated March 31, 1975, to Barksdale Bonding Co. recommending appellee for bonding. An SBA guarantee was also discussed; however, the bank's commitment was not contingent thereon.
After meeting with Tidwell appellee made several purchases of needed equipment to be used in his new business endeavor. On April 4, 1975, appellee purchased a 305 Koehring Dragline from Scribner Equipment Co. for $68,662.50. An installment note of $91,574.78 was executed after a $3,000 downpayment. Monthly notes equaled $2,210 payable on the tenth of each month except for the months of January, February and March. In the summer of 1975 appellee purchased two C-6 Euclid bulldozers from Case Power & Equipment Co. for approximately $23,000. An installment note was executed with monthly payments of roughly $1,000. In September of 1975, appellee purchased a Poclaine Track Excavator. This piece of equipment cost between $60,000 and $70,000. An installment note was executed with monthly payments in the amount of $1,900. Tidwell was contacted for verification of appellee's credit standing prior to each of these purchases.
On May 20, 1975, Tidwell sent another letter to Barksdale Bonding Co. informing Barksdale of appellee's unused $50,000 line of credit at FMBC. Following this letter, Barksdale bonded appellee on more than one occasion. Barksdale also required that an indemnity agreement be executed by appellee. On June 3, 1975, appellee called upon Tidwell for a loan in the amount of $2,500. They continued to seek SBA guarantee; however, their efforts proved unsuccessful.
At this point appellee had only performed minor jobs in an attempt to earn enough money to keep equipment payments current. *948 In the fall of 1975, appellee received invitations from the Corps of Engineers to bid on various projects. Appellee relayed this information to Tidwell, asserting that if they were successful in their efforts of securing a government contract, they would need $15,000 to $25,000 to begin the job. Tidwell informed appellee he could count on the bank. Appellee thereafter submitted bids on the three projects on November 6, 1975. Appellee was declared the low bidder on one of the projects ($41,000).
On November 7, 1975, appellee was contacted by K.E. McLaughlin, comptroller for the Corps of Engineers. McLaughlin asked for a showing of financial ability due to appellee being a new contractor as a condition precedent to the award of the contract. The following Monday, appellee met with Bill Tidwell who sent a letter dated November 10, 1975, to K.E. McLaughlin informing him of appellee's unused $50,000 line of credit with the bank. Appellee was thereafter awarded the construction contract on November 14, 1975. The contract required that appellee execute a performance bond in the amount of $41,075 and a payment bond in the amount of $25,537.50.
On November 14, or 17, appellee again met with Tidwell to secure a $15,000 loan to mobilize their equipment and to bring equipment payments current. Tidwell, however, informed appellee that FMBC could only loan him $12,500 because the bank had overextended itself in general. Appellee at first refused Tidwell's offer. Appellee's attempts to secure financing at other banks in the area proved unsuccessful due to the banks' previous dealing with the Hickmans. Appellee finally obtained a $3,000 loan from the Commercial Credit Bank. He then went back to FMBC where he executed an assignment of the proceeds to the contract and accepted the $12,500 loan.
Appellee's equipment was subsequently moved to the construction site in Vidalia, Louisiana, on December 22, 1975. While the contract originally called for completion in 40 working days, appellee was granted a 111-day extension due to rain. The adjusted completion date was May 11, 1976. Appellee was unable to obtain additional financing from FMBC until April 8, 1976, when he was loaned $1,255. However, at this point, appellee's dragline and excavator had been repossessed. Appellee tried to complete the job with borrowed equipment. He obtained a $1,500 loan from FMBC on April 29, 1976. In spite of his efforts, appellee was unable to complete the contract as scheduled and the same was terminated on August 10, 1976.
According to appellee, he would have been able to complete the contract if an additional $35,000 had been loaned to him by the bank. At the time he first made his request to the bank, he was indebted thereto for only some $15,000. Had the bank fulfilled its commitment, appellee could have retained his equipment and completed the job.
FMBC contended its commitment to appellee was revocable for the reason that appellee would be unable to perform his obligations under the terms of the contract. Its proof showed that appellee owed FMBC approximately $27,000 after executing the note on November 29, 1975, and owed Commercial Credit $3,000. Adding this to appellee's installment notes on his equipment, some of which were two and a half months delinquent, as of the first of the year, appellee owed approximately $43,000 with continuing obligations of $5,000 to $6,000 a month. The most appellee expected to profit from the contract was $25,000 which would have left appellee owing FMBC $18,000 even if the entire amount of the estimated profit was applied to appellee's indebtedness.
The contract was ultimately completed at a loss of $20,682.67 to the bonding company. A deficiency judgment was also entered against appellee in the United States District Court for the Middle District of Tennessee in the amount of $41,819.32. This judgment resulted from the repossession and sale of the Proclaine Excavator. Appellee also asserted that the dragline was worth approximately $83,000 at the time it *949 was repossessed while only $78,319.78 remained owing thereon.
I. Did the trial court err in failing to grant appellant's request for a directed verdict on the ground that appellant could terminate its agreement with appellee at will because such was for an indefinite period of time?
Appellant contends it was entitled to a directed verdict because the contract was an agreement to continue for an indefinite period of time and therefore terminable at the will of either party.
In United States Finance Co. v. Barber, 247 Miss. 800, 157 So.2d 394 (1965), this Court stated:
The contract was for personal services and furnishing commodities, and did not mention its period or duration. Such an agreement which does not specify its duration is ordinarily construed as one that is terminable at will. 12 Am.Jur., Contracts, § 305. In Westbrook v. McCarty, 160 Miss. 455, 469, 134 So. 193 (1931), there was a contract for furnishing commodities without a time limit. The court held that with no fixed period "the contract is terminable by either party on reasonable notice, and no cause therefore need be assigned." Echols v. New Orleans J & G.N. RR. Co., 52 Miss. 610 (1876); ef. Hastings-Stout Co. v. J.L. Walker & Co., 162 Miss. 275, 284, 139 So. 622 (1932) (where quantity of commodity was specified by contract, court implied reasonable time, not terminable at will). (247 Miss. at 809, 157 So.2d at 397)
* * * * * *

A notice for the rescission or termination of a contract "must be clear and unambiguous, conveying an unquestionable purpose to insist on the cancellation." 12 Am.Jur., Contracts, § 446, p. 1029. To effect a rescission, an affirmative act on the part of the person desiring to rescind is necessary. Although notice of recission need not consist of a formal written notice, the declaration or acts constituting rescission must be definite and unequivocal and clearly indicate the right asserted. 17A C.J.A., Contracts, § 135. Here the termination was without notice and with affirmative misrepresentations on the part of appellant indicating the contract was still in existence.
(247 Miss. at 811, 157 So.2d at 398)
See also Hazell Machine Co. v. Shohan, 247 Miss. 301, 161 So.2d 618 (1964); Smith v. Mavar, 198 Miss. 170, 21 So.2d 810 (1945); Westbrook v. McCarty, 160 Miss. 455, 134 So. 193 (1931); Echols v. New Orleans, Jackson & Great Northern Railroad Co., 52 Miss. 610 (1876); 17A CJS, Contracts § 398 (1963); and 17 Am.Jur.2d, Contracts § 486 (1964).
Turning to the facts in the instant case, the original agreement between appellant and appellee was entered into in March of 1975. Thereafter, the appellant verified its agreement with appellee as to various institutions with which appellee was dealing on at least six occasions. Prior to bidding on the contract with the Corps of Engineers, appellee again met with the appellant's agent and was informed if they were successful in their efforts of securing the Corps contract, they would need financing to bring their equipment notes up to date as well as funds to move the equipment and begin the job. Appellee was informed at this time (Fall of 1975) that he could count on appellant to fulfill its obligations.
On November 7, 1975, appellee was informed that he was the low bidder on one of the Corps contracts; however, because he was new to the construction business, he had to show financial ability to perform the job. In response to this request, appellant sent the following letter dated November 10, 1975, to the Corps of Engineers:
 Mr. K.E. McLaughlin, Comptroller
 U.S. Corps of Engineers
 Vicksburg, Miss.
Dear Mr. McLaughlin,
Please be advised that Waterways Construction Company of Corinth, Mississippi has an unused line of credit in the amount of $50,000.00 with this bank. Our experience with this company has been very satisfactory.
Yours truly,
*950
 Bill Tidwell
 Senior Vice President & Manager
 BT/lam
However, within the next seven days, appellant refused to loan appellee $15,000 requested, but did offer to loan appellee $12,500, asserting as a reason that appellant had overextended itself. This was the first notice that appellee received that the appellant would not honor its previous loan commitment and came only after the Corps of Engineers had accepted appellee's bid on the construction project.
Appellant contended at trial and also contends on appeal that a reasonable time in cancelling such an agreement as the one involved in the instant case was without notice, otherwise a bank would be forced to lend money to a borrower regardless of his ability to repay the loan.
The well-settled rule as to the denial of a motion for directed verdict or peremptory instruction was recently reiterated in Pittman v. Horn Indemn. Co., 411 So.2d 87 (Miss. 1982), wherein this Court stated:
First, we consider the question of whether the court erred in directing a verdict for Moss at the conclusion of all the evidence. In a motion for a directed verdict, and on a request for a peremptory instruction the court considers the evidence in the light most favorable to the plaintiff, disregards any evidence on the part of the part of the defendant in conflict with that favorable to the plaintiff, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiff, the motion for a directed verdict should be overruled and the request for a peremptory instruction should be denied. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975). (411 So.2d at 89)
The contract being of an indefinite nature was terminable at the will of either party but such termination could only be effectuated upon the giving of reasonable notice. Appellant's notice of its intention to limit the amount or terminate the agreement came only seven days after appellant had confirmed its commitment to appellee to the Corps of Engineers which no doubt was the major reason that appellee was awarded the government contract. Therefore, we hold under the peculiar facts and circumstances in this case that appellant's motion for directed verdict was properly overruled because the evidence presented an issue for resolution by the jury as to whether appellant's notice to terminate the contract was reasonable under the circumstances.
II. Was the jury allowed to consider improper elements of damages resulting from the alleged breach of contract?
Appellant contends that if there was a breach of the alleged contract, appellee's damages were limited only to the difference between the interest as provided for in the agreement and the interest at which another loan could have been secured.
In Consolidated American Life Ins. Co. v. Covington, 297 So.2d 894 (Miss. 1974), which involved an alleged breach of contract of a loan commitment, this Court stated:
The general rule of damages for the breach of contract is expressed in 5 A. Corbin, Contracts § 1078, at 446 (1961), as follows:
"If one who has contracted to lend money to another commits a breach, of course the latter has a right of action. His injury, however, may be merely nominal. This would be the case if the loan was to be at the market rate of interest and upon breach the borrower secured money of another lender at the same rate and without any extra expense. Frequently a higher rate must be paid and there are additional expenses incurred. When such is the case, damages are awarded to the extent of the injury thus shown.

There are cases in which the disappointed borrower has been unable to borrow money elsewhere because his own credit is not sufficiently good or because of lack of money to be had. In some instances the court has disregarded these facts and has refused to award *951 damages for injury consequent upon the failure to procure money."

The rule is that only nominal damages may be recovered for the breach of a contract to lend money where money may be procured elsewhere under the same conditions as to time and interest. Damages may be small or large according to the circumstances. The measure of the damages is the resulting loss sustained by the borrower through the breach of the contract. If a borrower could readily obtain a loan on the same terms, the damage would be nominal. If he were required to pay a higher rate of interest, or the note covered a shorter term, or other oppressive terms, the damage recoverable would be greater. 36 A.L.R. 1408 (1925); Restatement of Contracts § 343 (1932).
(297 So.2d at 894-95).
The items appellant complains of as inadmissible elements of damages consist of the loss to the bonding company in completing the contract with the Corps of Engineers as well as a deficiency judgment obtained in Tennessee after the sale of a piece of machinery owned by appellee.
After being awarded the government contract appellee requested a $15,000 loan pursuant to his agreement with appellant. Appellee was informed however that only $12,500 could be loaned because the bank had overextended itself. The breach of the line of credit commitment was therefore only a partial breach. Appellee was successful in obtaining a $3,000 loan from another financial institution.
The record in this case leaves little doubt that the proper measure of appellee's damages was the difference between the interest paid on the loan appellee secured from another financial institution and the interest rate of 10% which was agreed upon between the appellant and appellee.
The breach in this case only extends to the difference between the amount of the loan appellee requested pursuant to the loan commitment agreement ($15,000) and the amount actually loaned to appellee ($12,500). Therefore the measure of appellee's damages in the case sub judice is limited to the difference between the interest rate paid to secure the $2,500 and the 10% interest rate agreed upon between the appellant and appellee.
There was no showing that the other losses sustained by appellee were proximately caused by appellant's failure to loan the $15,000 when requested. Appellee obtained $15,500 from appellant and another lending institution when he only requested a $15,000 loan from appellant. While appellee contended he could have successfully completed the contract and retained his equipment if appellant had honored its commitment and he had received $35,000 under the agreement, the breach he complains of was the appellant's failure to loan him the entire $15,000 when requested. Because appellee was able to obtain $15,500 at this time ($500 more than requested from appellant) it would be purely speculative to hold that appellant's partial breach of the loan commitment proximately caused appellee's loss of equipment and failure to complete the government contract.
Therefore we hold that appellee's damages for the appellant's breach of the contract was limited to the differing interest rates charged when appellee was forced to obtain an additional $2,500 loan from a source other than appellant.
Based on the foregoing, this case is affirmed in part, reversed in part and remanded to the circuit court for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] This is the second appearance of this case before this Court. The case was previously reversed and remanded, in an unpublished opinion, due to the refusal of two requested instructions by FMBC on the issue of permissible revocation of the line of credit.