Boehm *v.* Friedman *et al.*

(In Banc.   April 14, 1941.)

[1 So. (2d) 508.   No. 34521.]

Dan C. Brewer, of Clarksdale, for appellant.

Maynard, Fitzgerald & Maynard, and **W. W. Venable**, all of Clarksdale, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The question here involved is whether the circuit court was in error in affirming the action of the county court, whereby a peremptory instruction had been granted in favor of the appellees at the conclusion of the testimony offered by the appellant in support of his claim for damages on account of a breach of warranty in connection with the sale of a mule to him by the appellee, Max Friedman, acting as agent for his son, the appellee Morris Friedman, an undisclosed principal.

The price agreed to be paid for the mule was the sum of $100, but there was included in the sale certain farm implements valued at $90, and for all of which consideration a promissory note was then executed in the aggregate amount of $190, payable to Morris Friedman, who the purchaser thought was the same person as Max Friedman, assuming as he did that "Max" was a nickname, since nothing had been said during the negotiations about the property belonging to anyone other than the person making the sale.

While enroute from the mule barn to the implement shed, after the appellant had selected the mule in question in preference to any of the others shown him, and before he had inspected the farm implements and agreed upon the execution of the note to cover the total purchase price as a single completed transaction, and consequently before there had been a delivery of any of the property, he asked the appellee Max Friedman if he would guarantee that mule to work. His reply was "Yes, sir, every one of my mules are good working mules." Naturally, it was necessary for the purchaser to rely upon this assurance, because one cannot look at a mule and form an intelligent conclusion and judgment as to whether he will work, and the assurance did constitute an inducement.

It was about a month after the sale before the weather afforded the purchaser an opportunity to ascertain whether the mule would work to a plow, or was a "good working mule" as represented. Upon learning that the animal could not be coerced to work under any circumstances, the appellant called to see Max Friedman and offered to return the mule to him. This offer was promptly declined and no explanation was given or denial made by the said agent in regard to the contention then being made by the appellant that the mule had proven to be wholly unfit for the use for which it had been purchased. His only response was, "When you signed the note, that ended the matter, and the mule is yours." Thereupon, it appears that the undisclosed principal did not unduly delay the

negotiation of the note to an innocent purchaser for value before its early maturity, thereby compelling the maker to later pay the same in full to the holder thereof.

There was no offer to return the farm implements when the proposal was made to return the mule, and hence the appellant was not in a position when bringing this suit nearly a year later to treat the sale as having been rescinded, and he was therefore left to his remedy of suing for damages for the breach of warranty as to the fitness of the animal for use.

The proof further discloses without dispute that after repeated efforts by the appellant and other persons to induce this mule to work, he wholly failed and refused to do so. Wherefore, the appellant contends that he was wholly worthless, and that he had no market value unless appellant had been willing to fraudulently withhold from a prospective purchaser the facts which he would be under a duty to disclose. Wherefore, he sued for the recovery of damages in the sum of $100, representing the purchase price paid, and also for the expenses which he had incurred over a period of nearly a year and up to the time of trial for his necessary upkeep, during all of which time the animal not only didn't choose to work, but could not be compelled to do so.

We are of the opinion that since the proof clearly shows that the mule would not work, and was therefore wholly worthless, in view of the fact that no one has yet discovered any useful purpose a mule on a farm or elsewhere is suitable for unless he will work, the case should have been submitted to the jury under proper instructions for the assessment of the damages thus shown. We express no opinion as to whether the appellant would be entitled to recover the expenses incurred for feeding the mule for nearly a year, where there was no rescission, or offer to rescind the purchase in its entirety, and where the proof fails to disclose that the purchaser ever attempted to reduce the damages claimed by giving the mule away or by abandoning him in some re-

mote community where he would have been unable to find his way back home.

It is urged on behalf of the appellees (1) that the agent was without authority to make the alleged warranty in the absence of proof that it was usual and customary in that section to make such a warranty in connection with this kind of a sale; and (2) that the proof fails to show that the purchaser relied upon the representation, since he selected the mule in the exercise of his own judgment before the alleged representation was made.

On the first proposition, we are of the opinion that no proof of the usual custom was necessary in order to establish that one authorized to sell personal property is vested with authority to bind his principal when answering such a pertinent inquiry as that here shown to have been made of him in regard to the fitness of the thing sold for the use and purpose for which it is being bought. Representations which are usually incident to such a transaction are held to have been made with authority by an agent entrusted with the sale of an animal, although without authority or apparent authority to give a warranty in regard thereto, since such authority may be reasonably inferred by the purchaser. Authority will be implied for the agent to make representations about matters in regard to which the principal should reasonably anticipate the purchaser would desire to be informed. Section 258. Rest. Agency. The question of whether or not a particular statement is reasonably pertinent to the transaction is for the triers of fact when the inquiry is whether the principal has reason to anticipate that the representations would be made. Under Section 258, supra, is contained the following illustration and is used where an agent is authorized to sell real estate: "A, agent of P, sells P's land to T, misrepresenting that the land does not overflow. A has no authority to make this kind of a statement. T purchases the land relying upon this statement. P. is subject to liability to T in deceit as for his own statement." We see no good reason why the

same rule should not be applied under authority to sell personal property such as that here involved, since a purchaser of a mule would be as likely to want to know whether he would work as a purchaser of land would want to know whether or not it is subject to overflow.

Responding to the second contention above stated, the proof discloses, as hereinbefore mentioned, that while the appellant had selected this particular mule in preference to either of the other three in the lot before the representation was made, the completed transaction, including the purchase of the farm implements and the execution of the note for the total purchase price, as well as the delivery of all of the property, transpired subsequent to the representation that the animal was a good work mule.

In the absence of other testimony, the proof submitted would have entitled the appellant to recover damages.

Reversed and remanded.