Evans *v.* Malone, d.b.a. Malone Herefords

No. 43090 June 1, 1964 164 So. 2d 794

*Wilbourn, Lord & Williams, Russell Wright,* Meridian, for appellant.

*Floyd, Cameron, Deen & Prichard,* Meridian, for appellee.

Lee, C. J.

This suit was instituted by Harrison Evans against Jack Malone in the circuit court to recover the purchase price of a purebred Hereford cow and the expenses of her upkeep because of the alleged misrepresentation of her condition during and at the time of the sale.

Under the pleadings and the evidence, the sole question was whether the condition of the cow at the time of the sale was fairly stated or was misrepresented.

Jack Malone developed a large herd of purebred Hereford cattle. Because of his health, it was found necessary to dispose of the animals; and, on that account, he determined to make a dispersion sale on May 20-29, 1962. He prepared and issued a catalog, describing the pedigree and other characteristics of the various animals to be sold, and employed auctioneers to conduct the sale.

Harrison Evans, a large land owner and cattle breeder, was interested in some of the animals to be sold. He and his herdsman therefore attended the sale.

The cow, designated in Lot 108, was identified in the catalog as E Wilma Tonnette, with bull calf at side, calved October 8, 1961, and bred November 16, 1961, to Colorado Heir.

Evans testified that he had a copy of the sales catalog. He was interested in this seven year old cow because she was bred to Colorado Heir, a fine bull. The cow was brought into the ring. He said: "The auctioneer and one of the sales managers read from the catalog the cow's breeding, when she was dropped, the fact that she was bred to this bull; the fact she had been pregnancy tested, examined, found to be safe with calf, that the cow was carrying a calf over six months." He said that he relied on that representation, and, if it had not been made, he would not have bought the cow. He saw the animal after the sale and she appeared to be in good condition. The next day, the cow was carried home, placed in an 18 acre pasture, was seen every day, and, on June 11, accepted service from a bull. There was no evidence at any time of an abortion. If she had been safe with calf at the time of sale, this incident on June 11 would not have occurred.

On cross examination, Evans said that he "relied on the statement made from the auction block the cow had been examined by competent veterinarian. I couldn't look at the cow, tell safe with calf, nobody could. We relied on statement made by Jack. Q. Nobody can look at a cow and tell whether or not they are safe with calf? A. Not just looking at them. Q. And it takes * * *. A. * * a man experienced in pregnancy testing." He conceded that Dr. J. H. Edwards of Hernando, Mississippi, was a good veterinarian; and that, if this doctor had told him the cow was pregnant, he would have relied on the doctor's statement. He said that there

was no mention of Dr. Edwards at the time of sale; but he admitted that the letter, which he received from the auctioneers about July 4, advised him that Dr. Edwards had made the examination around April 1. He was of the opinion that it was very improbable that the cow, if she was with calf at the time of the sale, could have aborted the foetus and accepted service on June.

L. P. Garrett, Evans' herdsman, testified that the catalog represented that the cow was bred November 16, 1961; and that the auctioneer stated that the cow had been examined for pregnancy and was found safe with calf. He saw the cow after the sale, was in the truck which transported her to the Evans plantation the next day, observed her from one to three times each day thereafter, found no evidence of a lost foetus in the pasture or barn, observed no evidence of an abortion, and on June 11 had confirmation that she was not with calf.

Jack Malone, called by the plaintiff as an adverse witness, admitted that the catalog represented that the cow was bred on November 16, 1961, to Colorado Heir; that his record indicated that she was pregnancy examined by Dr. J. H. Edwards and found to be safe with calf; and he presumed it was so announced in the ring. He testified that Dr. Edwards was one of the leading cattle veterinarians in America, and described his method of examination, and gave examples of the exactness of his opinions. After making this examination, the doctor gave his opinion that the cow was pregnant. While he did not hear the auctioneer, when the cow was in the ring, he felt sure that it was stated that she was safe with calf.

Three letters, Evans to Malone June 16, 1962, Max Cox to Evans July 4, 1962, and Max Cox to Evans July 17, 1962, were offered by the plaintiff as exhibits to Malone's evidence. In the first letter, making complaint, Evans said in part: ''The three cows were sold by the

auctioneer as having been examined and found safe in calf. On June 11 cow Sale Catalog No. 108, for which I paid $950.00, came in heat. Mr. Garrett, our herdsman, pregnancy tested the cow, found that she was open, put her with a bull and she accepted service. According to the catalog this cow was bred on November 16, 1961, which should make her over six months pregnant. According to the best information that I have, a cow that was this far advanced. in pregnancy could be checked and it determined if she was safe in calf.''

In the second letter, Cox, replying to Evans' recent letter, said in part: ''This cow was pregnancy examined around the first of April By Dr. J. H. Edwards of Hernando, Miss., considered by Jack Malone and ourselves as one of the best in the business for his accuracy in these examinations. * * * this cow was pronounced safe in calf by Dr. Edwards. * * * she had produced a calf every year she has been under the ownership of Jack Malone.''

In the third letter, Cox, expressing regrets, said in part: ''There is a faint possibility that the cow could have aborted during sale preparations and escaped detection. Another possibility is that a growth on the ovaries may have been mistaken for a foetus by Dr. Edwards. * * * pregnancy examination at best, is not infallible.''

Dr. Jack Denny, a veterinarian, explained that the normal estro-cycle of a cow is 21 days, and that if she aborted on May 28 with a six month foetus, it would be very unlikely for her to accept bull service in 12 days; but that the cow could have had a cycle in 14 rather than 21 days.

The controversy was submitted to a jury, and it found for the defendant. From the judgment entered, Evans has appealed.

On this appeal, Evans contends that he was entitled to a directed verdict; that the instructions were con-

flicting and prejudicial; and that the verdict was against the overwhelming weight of the evidence.

In the final analysis, Evans and his herdsman frankly admitted that they could not tell by looking at a cow whether she was pregnant, and that it is necessary to have an experienced person to make that determination. The herdsman conceded that, even then, the information may be wrong. Evans also admitted that, if Dr. Edwards had given him an opinion that the cow was pregnant, he would have relied on it.

The evidence is undisputed that Dr. Edwards, in early April, made an examination of the cow and gave his opinion that she was pregnant and was safe with calf. Consequently the auctioneer informed the prospective buyers, including Evans, that the cow had been pregnancy tested, examined, and found to be safe with calf. Malone conceded that it was very probably represented in the ring that the cow was safe with calf.

Consequently, when Malone's several answers are considered in their entirety, it is evident that the jury could well find that he was conceding, in the light of Dr. Edwards' examination and opinion, that, so far as human intelligence would permit, the auctioneer was truthfully presenting the condition of this animal.

In the case of Mayfield Motor Co., Inc. v. Parker, 222 Miss. 152, 75 So. 2d 435, the car was represented to be 1948 model and in good condition, but the evidence of the plaintiff was sufficient to show that it was a 1946 model and in bad condition. The opinion, affirming the verdict of the jury, cited H. D. Sojourner & Co. v. Joseph, 186 Miss. 755, 191 So. 418, on the question of what amounts to proof *scienter,* or such knowledge as charges one with the consequences of his acts in fraud and deceit. It recognized, as stating the settled rule, a quotation approved in Vincent v. Corbett, 94 Miss. 46, 47 So. 641, 21 L.R.A. (N.S.) 85, as follows: ''To make a party liable in an action at law for false

representations, it must be shown that he made the representations with actual knowledge of their falsity, or without knowing whether they were true or false, or under such circumstances that he ought to have known that they were false, whether he did or not.'' See also the authorities there cited. Cf. Bullard v. Citizens' National Bank, 173 Miss. 450, 160 So. 280; J. C. Penney Co. v. Scarborough, 184 Miss. 310, 186 So. 316.

The appellant has cited, as upholding his view, certain cases which are now referred to: In Fay & Egan Co. v. Cohn & Bros., 158 Miss. 733, 130 So. 290, the proof showed that the planer, matcher and moulder were purchased as a result of fraudulent representation. ▮▮ ▮ The opinion pointed out that fraud vitiates everything it enters into; ▮▮ ▮ and that, if the seller makes material representations of fact without knowing whether they are true or false, this is fraud in law, and the seller must make his statement good.

In Lizana v. Motor Sales Co., 163 Miss. 266, 141 So. 295, where the seller misrepresented the condition of the truck as to the number of miles it had run and its mechanical condition, the court pointed out that the test is whether the seller made the statement as a statement of fact and it had effect upon the matter of the purchase, and the purchaser had a right to rely on it. Consequently the verdict for the defendant was reversed because of an erroneous instruction, and the cause was remanded.

In Chancellor v. Fulton, 201 Miss. 252, 29 So. 2d 213, the cow was guaranteed by the seller to be in perfect shape and a sound milk cow. She was delivered unseen, at night; and the next morning she was sick, and died a few days later. Liability was clearly established in that case. Likewise, in Boehm v. Friedman, 190 Miss. 664, 1 So. 2d 508, the mule was represented to be a good working mule, but it developed that this animal would not work and was utterly worthless. The peremptory instruction was held to be erroneous and the cause was

reversed, the court saying that it should have been submitted to the jury.

In Rhynne v. Gammill, 215 Miss. 68, 60 So. 2d 500, it was stated that the misrepresentation must be proved by evidence that is clear and convincing; that inexcusable disregard of accuracy is misrepresentation; that it had to be the inducing cause of the sale and resulted in loss; and that it need not be proved that the seller was purposefully defrauding the purchaser.

There is no conflict in these decisions.

 █ It may then be asked, Did Malone through his agent, make the representation that the cow was safe with calf with knowledge that this was false, or without knowing whether or not it was true or false, or under such circumstances that he ought to have known that it was not true? Or rather did he relate the fact of the pregnancy examination, the finding by the examiner that the cow was safe with calf, and honestly seek to convey the reputed condition of the animal as a result of the examination? After all, the purpose is to determine whether these statements, under all of the evidence, constituted a misrepresentation of the condition of the cow at the time of the sale, or whether they honestly gave the record of what was done in an effort to determine the pregnancy of the cow and left it to the judgment of the purchaser to make up his mind on that record. That was the issue for the jury. The Court is of the opinion that the evidence was conflicting and that the appellant's peremptory instruction was properly refused.

 █ The instructions have been closely considered and thoroughly analyzed. When taken together, as they must be, the respective announcements on both sides being complementary to each other, the Court is unable to find any reversible error therein. From what has already been said, it is clear that the verdict was not

against the great weight of the evidence. Consequently it follows that the judgment must be, and it is, affirmed.

Affirmed.

*Ethridge, Gillespie, McElroy and Rodgers, JJ.,* concur.