481 So.2d 247 (1985)
Miles L. SHAW
v.
Charles BURCHFIELD, Charles E. Thomas, Everett Stringer, Southern Farm Bureau Life Insurance Company, Southern Farm Bureau Casualty Insurance Company, Mississippi Farm Bureau Mutual Insurance Company, Mississippi Farm Bureau Federation, and Marion County Farm Bureau (Aal).
No. 55061.
Supreme Court of Mississippi.
November 13, 1985.
*248 Dixon L. Pyles, Pyles & Tucker, Jackson, for appellant.
Sam E. Scott, William T. May, Heidelberg, Woodliff & Franks, Jackson, for appellees.
*249 Before ROY NOBLE LEE, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents us with an all too familiar scenario upon the landscape of corporate America. A man invests twenty-six years of his life in serving a relatively large, and always impersonal, corporate organization, in this case an insurance company. Used up, he is discharged on ten days notice, no cause given and, it is contended, none required. In the end, the attendant rights and burdens are imposed by law, not sympathy or outrage.
Unlike many at will termination cases, this record presents us express written contractual language by its terms legally empowering either party to terminate the contract without cause provided only that ten days advance written notice be given. Conceding as an illusion that the parties are in a posture of economic parity one with the other, particularly in ability to absorb the consequences of termination, we consider it our obligation to enforce the contract as written, as did the trial judge. The employee has made his bargain, in the end an improvident one, yet one, on the facts presented, we regard as beyond our authority to disturb.

II.

A. The Parties

Miles L. Shaw, Plaintiff below and Appellant here, was born on April 28, 1925, and is an adult resident citizen of Marion County, Mississippi. Beginning in July of 1955, Shaw began working for a conglomeration of three Farm Bureau Insurance Companies serving as their agent.
Southern Farm Bureau Life Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Mississippi Farm Bureau Mutual Insurance Company are Mississippi corporations organized for the purpose of meeting the insurance needs of Mississippi citizens, particularly the insurance needs of Mississippi farmers. The three Defendant insurance companies are separate and distinct corporate entities which have a joint, state-wide sales force that commonly serves each of the Companies. Each is an Appellee here.
Two of the named individual Defendants, Charles Burchfield and Charles E. Thomas, are employees in the state-wide sales department which serves the three Farm Bureau Insurance Companies. Burchfield is the State Sales Director and Thomas is a District Sales Manager. Burchfield and Thomas are Appellees here.
Defendant Everett Stringer is the elected President of Defendant Marion County Farm Bureau, but is not an officer or employee of the Farm Bureau Insurance Companies. Stringer is an Appellee here.
Marion County Farm Bureau (AAL), another Defendant, is an organization incorporated under the laws of the State of Mississippi for the purpose of serving the needs of farmers in Marion County, Mississippi. Defendant Mississippi Farm Bureau Federation is an organization incorporated under the laws of the State of Mississippi for the purpose of serving the needs of farmers throughout the State of Mississippi. Each of these Defendants is an Appellee here.

B. The Contracts

Miles Shaw contracted to work as agency manager for the three Farm Bureau Insurance Companies in Marion County in 1968 and continued in that capacity until his employment was terminated on June 1, 1981. Shaw had signed agency manager contracts with each, most recently on the following dates:
(1) Southern Farm Bureau Life Insurance Company Agency Manager Contract  January 1, 1980.
(2) Southern Farm Bureau Casualty Insurance Company Agency Manager Contract  March 1, 1974.
(3) Mississippi Farm Bureau Mutual Insurance Company Agency Manager Contract  March 1, 1974.
*250 The Farm Bureau insurance business in Marion County was, by virtue of Shaw's position under the contracts, primarily under his direction and control. This included the solicitation of insurance applications, the training and supervision of agents and office personnel, and the daily operations and functions of the insurance office.
Each of the three contracts contained a termination clause. Shaw's contract with Southern Farm Bureau Life Insurance Company provided as follows:
We both agree that this contract, together with any and all riders and supplements hereto, shall terminate:
(a) as of the last day of the month in which you attain the age of seventy (70) years;
(b) Ten (10) days following written notice of termination by either party to the other party computed from date of mailing said notice to the last known address of such other party by registered or certified mail. Either party may elect to so terminate this contract, and no cause shall be required; (Emphasis added)
(c) Immediately upon the commission of any act of dishonesty or fraud or any attempt on your part to induce any agent of the Company to terminate his services;
(d) Upon your death or your permanent or otherwise incapacitating disability.
Shaw's contract with Southern Farm Casualty Insurance Company stated as follows:
It is mutually agreed that this contract, together with any and all riders and supplements hereto, shall terminate:
(a) as of December 31 of the calendar year in which you attain the age of sixty-five (65) years;
(b) Ten (10) days following written notice of termination by either party to the other party computed from date of mailing said notice to the last known address of such other party. Either party may elect to so terminate this contract, and no cause shall be required; (Emphasis added)
(c) Immediately upon the commission of any act of dishonesty or fraud.
Shaw's contract with Mississippi Farm Bureau Mutual Insurance Company stated as follows:
It is mutually agreed that this contract, together with any and all riders and supplements hereto, shall terminate:
(a) Ten (10) days following written notice of termination by either party to the other party computed from date of mailing said notice to the last known address of such other party. Either party may elect to so terminate this contract, and no cause shall be required; (Emphasis added)
(b) Immediately upon the commission of any act of dishonesty or fraud.
(c) Upon your death or upon determination by the Company that you are unable to continue your duties;
(d) As of December 31 of a calendar year in which you attain the age of sixty-five (65) years.
In addition to these provisions, each contract contained express provisions that the particular contracts cancelled and superseded any prior contracts between the particular company and Shaw, and that failure of either party to insist upon strict performance of any condition of the contract could not be construed as a waiver of any such condition. Finally, each contract contained a provision to the effect that it could be modified only
by agreement in writing, executed on behalf of the Company by a duly authorized officer or representative of the Company.

C. The Termination

Throughout much of the time he worked with these companies, Shaw has had a series of health problems sometimes requiring hospitalization. Beginning in 1980, Shaw suffered and was treated for a sinus problem, arthritis, a cardio-vascular problem, high blood pressure and tularemia. In December of 1980 he had a heart catheterization. He was hospitalized for ten days from the latter part of April to the first week of May. By his admission, for the *251 period of one year just prior to his termination in May, he was either hospitalized or at home sick for sixty days.
On May 13, 1981, Shaw was informed by certified letter that the Agency Manager Contracts between him and the Defendant Farm Bureau Insurance Companies were terminated effective June 1, 1981. No cause was given. Three days later, on the 15th or 16th of May, Shaw was again admitted to the hospital for his heart condition and depression.

D. Proceedings Below

Miles L. Shaw commenced this civil action on March 31, 1982, by filing his complaint in the Circuit Court of Marion County, Mississippi. The Defendants are named above. Suffice it to say that Shaw has sued everyone in sight.
In his complaint, Shaw demanded of the Defendants damages said to have arisen from termination of his employment, asserting three theories of liability:
(1) Breach of contract;
(2) Intentional interference with existing contracts and prospective contractual relations; and
(3) Conspiracy to involuntarily deprive Shaw of his position as agency manager and to deprive him of his business properties.
One count of the Complaint alleges that the Defendants failed and refused, and still fail and refuse, to perform the contracts which Shaw entered into with the corporate Defendants, i.e., that the corporate Defendants breached their contracts with Shaw.
Count Two of the Complaint alleges that the "individual" Defendants intentionally and improperly interfered with the performance of the existing contracts between Shaw and the Defendant insurance companies by inducing and otherwise causing the insurance companies not to perform the contracts. Count Two further alleges that the "individual" Defendants intentionally and improperly interfered with Shaw's prospective contractual relations with the insurance companies and that the "individual" Defendants induced and otherwise caused the insurance companies not to enter into or continue the prospective relations with Shaw and prevented him from continuing the prospective relations.
The final count of Shaw's Complaint alleges that all of the Defendants conspired together from an unspecified date in 1975 until May 13, 1981, to have Shaw illegally placed in the status of involuntarily retired agency manager. This action was allegedly done for the unlawful purpose of gaining control of "his" insurance agency and to fraudulently deprive him of "his" business properties.
Defendants denied the essential allegations of the complaint, whereupon the parties commenced substantial discovery which included no less than nineteen depositions and has generated a substantial record to be considered by this Court on appeal.
On January 6, 1983, Defendants invoked the provisions of Rule 56, Miss.R.Civ.P., and moved for summary judgment. The matter was extensively briefed, following which on March 17, 1983, the Circuit Court sustained the motion and entered judgment summarily in favor of each Defendant and against the Plaintiff Miles L. Shaw. This appeal has followed.

III.
The nuances and contours of our not quite four year old summary judgment procedure are becoming familiar and established. Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 789 (Miss. 1984) citing Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983) and its progeny. Rule 56, Miss.R.Civ.P., provides a means through which a party in a lawsuit may pierce the allegations of his opponent's pleadings showing through affidavits or otherwise that there are no genuine fact issues that need to be tried.
As this Court stated in Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), reiterating the comments by the Advisory Committee:

*252 A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of facts on a Rule 56 motion; it may only determine whether there are issues to be tried. (emphasis by the Court)
444 So.2d at 362.
The summary judgment movant has a burden of persuasion; a burden to establish that there is no genuine issue of material fact to be tried. Pearl River County Board v. South East Collection, 459 So.2d 783, 785 (Miss. 1984); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). The party opposing the motion must rebut, if he is to avoid entry of an adverse judgment, by bringing forth probative evidence legally sufficient to make apparent the existence of triable fact issues. Smith v. First Federal Savings and Loan Association of Grenada, 460 So.2d 786, 792 (Miss. 1984).
Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of material fact". The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense. As the extensive record in this case has been considered, as well as the persuasive and articulate briefs of counsel, we have kept ever before us that basic tenet of Rule 56 theology that the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

IV.
Shaw's principal assignment of error is, in substance, that the trial court erred in holding as a matter of law that the Farm Bureau Insurance Companies had authority to terminate their contracts with him without cause and only upon ten days written notice.
We have on three occasions applied our rule regarding summary judgment in the context of a trial judge's entry of summary judgment in a case which turned on the construction of a contract. Generally speaking, we take a dim view of the practice of resolving contract ambiguities via summary judgment. Dennis v. Searle, 457 So.2d 941 (Miss. 1984); Biggers v. Fox, 456 So.2d 761 (Miss. 1984). On the other hand, if the terms of a contract are clear, the question is one of law even though the parties may disagree regarding meaning and import of those terms. Hicks v. Quaker Oats Co., 662 F.2d 1158, 1175 (5th Cir.1981). Therefore, where the contract is without material ambiguity, the matter is often appropriate for summary disposition. This is so where the provisions of the contract are clear, even though not perfectly clear. Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 790 (Miss. 1984).
The trial judge held that the three contracts before us today were clear, that is, that they were not in law ambiguous. We agree. Where there is no substantial ambiguity requiring adjudication, a contract must be enforced as written. Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 790 (Miss. 1984); Pfisterer v. Noble, 320 So.2d 383, 384 (Miss. 1975). We are not in such cases so concerned with what the parties may have meant or intended but rather with what they said, for the language employed in a contract is the surest guide to what was intended. See Landry v. Moody Grisham Agency, Inc., 254 Miss. 363, 375, 181 So.2d 134, 139 (1965).
The language of the three contracts has been quoted above and need not be repeated here. Suffice it to say that two contracts provide for termination as of December 31 of the calendar year in which Shaw should attain the age of sixty-five (65) years while the third would terminate as of the same date in the year Shaw became seventy (70) years old. Each contract provides, in addition, for termination by either party *253 upon ten days written notice "and no cause shall be required". Third, each contract contains a clause authorizing termination should Shaw commit any act of fraud or dishonesty. Fourth, two of the contracts, the ones with Southern Farm Bureau Life Insurance Company and with Mississippi Farm Bureau Mutual Insurance Company, provide for termination upon death or disability.
The Farm Bureau Insurance Companies argue that each of these clauses provided at least three independent and severable bases upon which the contract might be terminated. They argue that each contract was in fact terminated by them pursuant to the ten day notice/termination at will clause and wholly without reference to any other termination clause. The trial judge accepted this approach and held that the unambiguous language of the terminable at will clauses empowered the companies to effect Shaw's termination in the manner in which such was done.
Shaw argues here that the various termination clauses modify each other and, specifically, that the age limitation clauses render each contract one for a fixed term. Shaw misreads what we regard as the clear language of these contracts. Perhaps all possible doubt could have been removed if the disjunctive "or" had been included following each of the several termination provisions. The matter could have been made perfectly clear if at the end of each termination clause language to the effect of "whichever occurs sooner" had been inserted. Notwithstanding these matters, we regard it as quite apparent that each contract identifies in its general termination clause three or four (depending upon which contract is at issue) separate and independent events which would effect final termination of the contract. None modifies any of the others.
On May 13, 1981, each of the three Farm Bureau Insurance Companies gave Miles L. Shaw written notice that the contract would be terminated effective June 1, 1981. This notice complied in all respects with the ten day notice/termination at will clauses of the three contracts. No cause was given and none was required.
To be sure, each contract provided unequivocably that failure to enforce rights of one of the parties would not constitute a waiver with respect to future enforcement of such rights. Further, each contract provided that it could be modified only by written agreement executed on behalf of the company by a duly authorized officer. Nothing decided here rests on these contract provisions. Each was subject to subsequent modification, written or oral, notwithstanding the contracts' proscriptions on oral modifications. New York Life Insurance Co. v. O'Dom, 100 Miss. 219, 239, 56 So. 379, 382 (1911). Shaw has presented us with no evidence of any modification agreements, written or oral.
Instead, Shaw argues that the companies had modified these and other comparable contracts over the years by an informal policy of terminating such contracts only where good cause did exist therefor. In deposition Charles Burchfield conceded that in practice the companies terminated persons employed under such contracts only for cause. The record, however, contains no facts which suggest that the companies have promulgated any formal policy which might be given the legal effect of modifying the at will termination clauses of the three contracts at issue here. Nor is there any credible showing that Shaw remained in the companies' employ in proximate reliance upon any such policy. On these facts, the contracts stand as written.
In deciding so, we are not unaware of the broadside attack in recent years made upon the idea of at will termination of employment contracts.[1] Under fire is the notion *254 that, absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible. See Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d 388, 397 (Miss. 1983); Kelly v. Mississippi Valley Gas Co., 397 So.2d 874 (Miss. 1981); Rape v. Mobile & Ohio Railroad Co., 136 Miss. 38, 100 So. 585 (1924); Sartin v. City of Columbus Utilities Commission, 421 F. Supp. 393, 401 (N.D.Miss. 1976), affirmed 573 F.2d 84 (5th Cir.1978). This proviso has often been implied in various kinds of personal services contracts not specifying their duration. First Mississippi Bank of Commerce v. Latch, 433 So.2d 946, 949 (Miss. 1983).
Such contracts in form are reciprocal in that either party may terminate at will. Still, we may not remain insensitive to the fact that the impact of termination upon the employee is in general more adverse in a way that is qualitatively different than what the employer experiences when it is the employee who walks off the job. We approach this case cognizant of the force of Anatole France's pointed observation that "the law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread".[2] Were this a case where no employment contract established expressly the ground rules for termination and where the employer was calling upon the state to furnish the law which authorized termination, we might well be charged to reconsider the at will termination rule.
Here, however, the law governing the rights and powers of the parties is privately made law furnished by the parties themselves. That law exists and binds the parties by virtue of the three indisputably valid and enforceable employment contracts  the two made March 1, 1974 and the third made January 1, 1980. For better or for worse  and, more importantly, for valuable considerations, Miles Shaw agreed that the Farm Bureau Insurance Companies could terminate his employment upon ten days' written notice and "no cause shall be required". Similar language had been in Shaw's contracts with the insurance companies at least since 1968. Notwithstanding our awareness of the unrest in this area of the law and the reasons therefor, we perceive our obligation in the case at bar as enforcement of the contracts as written. With respect to Shaw's breach of contract theory, we hold that there is no genuine issue as to any material fact and that the Farm Bureau Insurance Companies are entitled to judgment as a matter of law.

V.
As a separate theory of recovery, Shaw has charged that the individual Defendants tortiously interfered with the contracts existing between him and the Farm Bureau Insurance Companies. This claim, as with the others, was dismissed in the Circuit Court via summary judgment.
Without doubt, our law recognizes, on behalf of one whose contractual relationship has been tortiously interfered with, a right of recovery from the interferor. Protective Service Life Insurance Co. v. Carter, 445 So.2d 215, 219 (Miss. 1983). One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to *255 liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract. Restatement (Second) of Torts § 766 (1979); see Cranford v. Shelton, 378 So.2d 652, 655 (Miss. 1980); Southwest Drug Co. v. Howard Brothers Pharmacy of Jackson, Inc., 320 So.2d 776, 778 (Miss. 1975); Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 67, 121 So.2d 118, 119 (1960); Bailey v. Richards, 236 Miss. 523, 536-37, 111 So.2d 402, 407 (1959). On the other hand, one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person. Restatement (Second) of Torts § 770 comment b, illustration 3 (1979).
We note that numerous cases from other states recognize that there is no right of recovery on the part of a discharged employee against one said to have interfered with a contract terminable at will. Rockwell v. Automatic Timing Co., 559 F.2d 460 (7th Cir.1977); Hansen v. Barrett, 183 F. Supp. 831, 833 (D.Minn. 1960); Noah v. L. Daitch & Co., 22 Misc.2d 649, 192 N.Y.S.2d 380, 386 (1959); Luisoni v. Barth, 2 Misc.2d 315, 137 N.Y.S.2d 169, 172 (1954); Davis v. Alwac International, Inc., 369 S.W.2d 797, 802 (Tex. 1963); Kingsbery v. Phillips Petroleum Co., 315 S.W.2d 561, 576 (Tex. 1958). These cases procede on the premise that, where there has been no breach of contract, conceptualizing a tortious interference fails as a matter of elementary legal logic.
The individual Defendants here were officers and agents of the various Farm Bureau Insurance Companies. The record establishes without contradiction that they had responsibilities with respect to Shaw's employment with those companies and the three contracts in issue. Where a corporation has a contract with another, and where an individual who is an agent of the corporation has responsibilities with respect to the contract, any actions taken in good faith within the scope of those responsibilities are privileged and thus not actionable. Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960); Wesley v. Native Lumber Co., 97 Miss. 814, 53 So. 346, 347 (1910); Martin v. Texaco, Inc., 304 F. Supp. 498, 502 (S.D.Miss. 1969). There being no showing of bad faith in the record sufficient to avoid summary judgment, and there otherwise being no genuine issue of material fact, we hold that the trial judge correctly determined the Defendants entitled to judgment as a matter of law.

VI.
Shaw's conspiracy claim meets a similar fate. As indicated above, the complaint charges all Defendants with a conspiracy to deprive Shaw of his position with the Farm Bureau Insurance Companies. That claim likewise was dismissed by the trial judge via summary judgment.
A conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully. Mississippi Power & Light Co. v. Town of Coldwater, 234 Miss. 615, 636, 106 So.2d 375, 381 (1958). Civil conspiracy resulting in damage may well give rise to a right of recovery under our law. Bailey v. Richards, 236 Miss. 523, 537-38, 111 So.2d 402, 407-08 (1959). There is no actionable conspiracy, however, where all that is shown is the exercise in a lawful manner of a right to terminate a contract. As indicated above, the Farm Bureau Insurance Companies were vested with such a right. Accordingly, the trial judge correctly dismissed Shaw's conspiracy claim. Claus v. Gyorkey, 674 F.2d 427 (5th Cir.1982); Sullivan v. Massachusetts Mutual Insurance Company, 611 F.2d 261, 266 (9th Cir.1979); Bell v. Speed Queen, 407 F.2d 1022, 1026 (7th Cir.1969).
There being no further points raised by Shaw possessing merit or requiring comment, the judgment of the Circuit Court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] See, e.g., Smith v. Atlas Off-Shore Boat Service, 653 F.2d 1057, 1061 (5th Cir.1981). Many of the cases considering the continuing viability of at will termination of employment contracts have been collected in Annotation, Right To Discharge Allegedly "At Will" Employee As Affected By Employer's Promulgation Of Employment Policies As To Discharge, 33 A.L.R.4th 120 (1984); and Annotation, Modern Status Of Rule That Employer May Discharge At Will Employee For Any Reason, 12 A.L.R.4th 544 (1982). Valuable scholarly comment appears in Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv.L. Rev. 1931 (1983); Note, Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith, 93 Harv.L. Rev. 1816 (1980). For a voice of caution, see Harrison, The "New" Terminable-At-Will Employment Contract: An Interest and Cost Incidence Analysis, 69 Iowa L.Rev. 327 (1984).
[2] This quotation is taken from "Le Lys Rouge" (1894), reproduced in 5 works of Anatole France 91 (W. Stephens transl. 1924). It has been suggested in a context similar to the present in Ludwick v. This Minute of Carolina, Inc., 283 S.C. 149, 321 S.E.2d 618, 620, fn. 3 (1984).