**Hubert PINNIX, Plaintiff,**

v.

**BABCOCK AND WILCOX, INC., A.M. Rogers and B.E. Ervin, Defendants.**

Civ. A. No. EC 85–445–D–D.

United States District Court, N.D. Mississippi, E.D.

July 20, 1988.

Jim Waide, Tupelo, Miss., for plaintiff.

Robert D. Patterson, Patterson & Patterson, Aberdeen, Miss., William A. Ziegler, Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the defendants' motion for summary judgment. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the court finds that the defend-

---

ants' motion should be granted in part and denied in part.

## I.

### FACTUAL BACKGROUND

This cause is an action brought by the plaintiff, Hubert Pinnix ("Pinnix"), against the defendants, Babcock and Wilcox, Inc. ("B & W"), A.M. Rogers ("Rogers"), and B.E. Ervin ("Ervin"). Pinnix, an adult resident citizen of Choctaw County, Mississippi, was born on January 21, 1926 and is at this time 62 years of age. B & W operates a plant in West Point, Mississippi but maintains its principal place of business outside Mississippi. Rogers is an adult resident citizen of North Carolina and Ervin is an adult resident citizen of Tennessee. Thus, there is complete diversity under 28 U.S.C. Section 1332.

In his amended complaint, Pinnix alleges that he was wrongfully terminated for one or more separate reasons: 1) Rogers and Ervin conspired to have him discharged because of Rogers' alleged animosity towards Pinnix, thereby tortiously interfering with Pinnix's employment contract or his employment relations; 2) Pinnix was discharged because of his age; or 3) Pinnix was discharged because of his age in combination with the tortious acts of Rogers and Ervin.

Pinnix was initially employed by B & W in 1956 as an hourly employee at B & W's West Point plant. In 1972, Pinnix was promoted to a salaried foreman, a position which he held until his layoff in 1985. Pinnix avers that when he was first offered a salaried position, he expressed concern about losing the benefits of Union membership.[1] Pinnix contends that he was assured by his superior, Chuck Christian, that he would retain all the rights of a Union em-ployee and that Pinnix accepted the salaried position in reliance on this assurance.[2] Under the terms of the cba, the benefits of Union membership include the right to be discharged only upon a showing of "just cause" and the right to be laid off in accordance with seniority.

Defendant Ervin served as manager of shop operations at the West Point plant from September 1983 until the layoff of Pinnix in May of 1985. As such, Ervin was head of the department in which Pinnix served as a foreman. B & W undertook a reduction in force of salaried personnel sometime in 1985. Ervin was allegedly instructed to recommend for layoff three of the 33 supervisory personnel in his department. Pinnix was included among the three employees recommended for layoff.

When he received notice of his discharge, Pinnix concluded that his discharge had been motivated by animosity shown towards him by Rogers, who allegedly conspired with Ervin to bring about Pinnix's layoff based either solely on such animosity or based on such animosity in combination with Pinnix's age. Pinnix was 59 years of age at the time of his layoff.

Pinnix filed his original complaint in this action on October 8, 1985, in the Circuit Court of Clay County, Mississippi, alleging that his layoff violated state law and federal law. Defendants removed the action to this court on November 5, 1985. On September 3, 1986, Pinnix filed his amended complaint. In his amended complaint, Pinnix apparently bases his federal claims upon the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621, et seq. and the National Labor Relations Act ("NLRA"), 29 U.S.C. Section 151, et seq.[3] The defendants have moved for sum-

---

**1.** B & W has maintained a collective bargaining agreement ("cba") with the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers ("Union") for many years, including at all times prior to and subsequent to Pinnix's promotion to foreman.

**2.** The court expresses no opinion about the authority of a supervisor to make such an agreement altering the clear and unambiguous language of the cba, which excludes salaried employees from its protection.

**3.** The court also notes that because of the ambiguous nature of plaintiff's complaint, his federal claim may be construed as arising under the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185, et seq., and the court has considered herein applicability of the LMRA as well as the NLRA.

mary judgment as to all claims set forth in the amended complaint.

## II.

### CONCLUSIONS OF LAW

The plaintiff's amended complaint sets forth several alternative theories for recovery under both state law and federal law. The court deems it appropriate to address each claim separately as indicated below. Pinnix asserts that his "primary claims are that B & W breached its contract with him and that Rogers interferred [sic] with his employment contract." Plaintiff's Brief in Opposition to Motion for Summary Judgment at 5. The court considers first these contract claims based primarily upon state law.

### A. Was There an Enforceable Contract of Employment?

Pinnix's argument that B & W breached its contract with him and that Rogers interfered with that contract presumes a fact which the defendants strongly contest: that Pinnix in fact had an enforceable contract of employment. The defendants argue that Pinnix's contract, if any, was merely an oral contract for an indefinite period, rendering Pinnix an employee at will. The court is inclined to agree with the defendants' contention.

■ All facts upon which Pinnix relies in his effort to establish the existence of an enforceable employment contract involve oral representations made to him, not any binding written agreement. These "promises", as Pinnix refers to them, included:

1. an oral agreement between Pinnix and a supervisory employee of B & W to the effect that in exchange for his promotion to a salaried position, Pinnix would be permitted to retain the benefits of the cba;
2. an understanding that layoffs would be conducted on a seniority basis, even among salaried employees;
3. an understanding that only the poorest performer would be laid off and that a salaried employee's two most immediate supervisors would be consulted prior to his layoff;
4. a policy of permitting terminated salaried employees to return to hourly-paid positions in the bargaining unit.

Pinnix notes that he was "assured" by Chuck Christian that he would retain the rights of a member of the collective bargaining unit even after he accepted a supervisory position. This "assurance" forms the basis of Pinnix's argument that he had an enforceable contract of employment with B & W. The court concludes otherwise.

The current law in Mississippi, which is binding upon this court sitting in diversity, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), provides that an employment for an indefinite term not supported by any consideration to the employer except the rendition of services in exchange for wages is an employment at will, terminable at any time by either party. *See Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086 (Miss.1987); *Shaw v. Burchfield*, 481 So.2d 247 (Miss.1985); *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981). Since Pinnix can point to no written agreement stating a definite term of employment, his unwritten, oral employment contract is subject to the ruling of the Mississippi Supreme Court in *Perry, supra:*

> [W]here there is no employment contract (or where there is a contract which does not specify the term of the worker's employment), the relation may be terminated at will by either party.

*Id.* at 1088.

Although Pinnix ties his oral contract of employment to the written terms of the cba, he can point to no separate written employment contract. While a written contract may subsequently be modified orally, *St. Louis Fire & Marine Ins. Co. v. Lewis*, 230 So.2d 580 (Miss.1970), an oral contract *ab initio* cannot be converted into a written contract by mere reference to other writings absent a showing that the writings are meant as a memorandum of the oral agreement. Pinnix himself admits

that his contract was only an oral contract.[4] Plaintiff's Brief in Opposition to Motion for Summary Judgment at 9. The Mississippi Supreme Court has expressed extreme reluctance to recognize any exception to the harsh terminable at will doctrine. *Perry,* 508 So.2d at 1090.

This is not a case where the plaintiff is urging that a modification to an existing, written contract be recognized by the court. *See Perry, supra,* at 1088. While this court recently held that the Mississippi Supreme Court would likely recognize a narrow exception to the employment-at-will rule where an employee alleges that his discharge was motivated by a refusal to engage in illegal acts, *Laws v. Aetna Finance Co.,* 667 F.Supp. 342, 348–349 (N.D. Miss.1987), the case *sub judice* does not come within that narrow exception. Pinnix has not alleged that his layoff violated some clear mandate of public policy. *Id.* at 348. Thus, the court is constrained to hold that Pinnix has failed to establish that he had an enforceable contract of employment.[5] Any claims for breach of the contract of employment must, therefore, be dismissed since there exists no genuine issue for trial as to these claims. Fed.R.Civ. P. 56(e).

### B. Was There Any Tortious Interference With Employment Relations?

As the court has held, Pinnix cannot establish the existence of an enforceable employment contract. Obviously, if no enforceable contract existed, then any interference with that contract would be immaterial and does not represent a genuine issue for trial. Fed.R.Civ.P. 56(e).

**4.** Furthermore, even a *written* contract of employment without a term of duration is terminable at will. *Perry, supra.*

**5.** Pinnix makes repeated reference to a provision of the cba requiring that layoffs be made in accordance with seniority. Sections 2.01 and 8.08 of the cba, however, expressly exclude non-bargaining unit employees and salaried employees from coverage. Exhibit 5 to Defendants' Motion for Summary Judgment. Section 8.08, contrary to Pinnix's interpretation, does not, in the opinion of the court, provide for any "right" of a salaried employee to be returned to the bargaining unit. Rather, that provision states

In any event, even if Pinnix had established an enforceable contract of employment, the court holds as a matter of law that Ervin's and Rogers' acts did not "tortiously interfere" with that contract. As supervisory employees, the acts of Ervin and Rogers were performed at the direction of Pinnix's employer, B & W. While acting within the scope of their responsibilities as supervisors, Ervin and Rogers are not subject to individual liability. *Shaw v. Burchfield,* 481 So.2d at 255. Choosing to terminate an at-will employee, even if based on personal animosity, would not have exceeded Ervin's and Rogers' responsibilities. An employer and its agents may terminate an employment at will contract for a good reason, a wrong reason, or no reason. *Kelly, supra,* 397 So.2d at 875. Pinnix's claims against Rogers and Ervin concerning tortious interference with employment relations must therefore be dismissed.

### C. Was There a Violation of Federal Labor Law?

In paragraph XII of his amended complaint, Pinnix alleges that he was afforded "less favorable treatment than would be afforded union employees", thereby violating the laws of the United States. Pinnix does not specify which "laws" have been violated. Liberally construing Pinnix's complaint, it is possible that the allegation seeks to redress either an unfair labor practice, thereby implicating Section 8(a)(3) of the NLRA, 29 U.S.C. Section 158(a)(3), or a violation of the cba, thereby implicating Section 301 of the LMRA, 29 U.S.C.

simply that: "Such [non-bargaining unit employee] shall retain his seniority and in the event he is subsequently transferred back to the bargaining unit, he will be credited with the seniority he had on the date of his transfer...." *Id.* There is no ambiguity in the subject language suggesting that it affords terminated salaried persons "an opportunity to go back to an hourly job", as argued by Pinnix. As the court construes the relevant language, it is solely within the employer's discretion to decide whether to transfer a salaried employee back to the bargaining unit.

Section 185(a).[6] Because of the ambiguity of Pinnix's intent, the court finds that the appropriate course at this juncture is for Pinnix to amend his complaint to state the basis of the alleged violation of federal law.

■ If Pinnix's claim is brought under the NLRA, then this court would be required to defer to the special expertise of the National Labor Relations Board ("Board"). Where violations of the NLRA are alleged or may be fairly assumed from the face of the complaint, these claims must be addressed in the first instance by the Board. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–245, 79 S.Ct. 773, 779–780, 3 L.Ed.2d 775, 782–783 (1959). If Pinnix is alleging an unfair labor practice, he must first bring a claim before the Board and is preempted from bringing his action initially in this court.

In his response brief, Pinnix argues that his claim is that B & W violated its "contract" with him to afford him the same rights that Union members have under the cba to be discharged only for just cause. This claim, Pinnix states, is brought under Section 301 of the LMRA and is properly within the jurisdiction of this court sitting in diversity. To assure clarity, the court would prefer to have Pinnix state his claim more specifically by amending his complaint. If he seeks to bring a claim under Section 301 of the LMRA, he should so state in his amendment.

### D. Was There Age Discrimination?

■ The court finds that there exist material issues of genuine fact concerning the question of whether age entered into the defendants' decision to discharge Pinnix. In this connection, the court has given careful consideration to the Fifth Circuit's admonition that "summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent...." *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 640 (5th Cir.1985). Summary judgment on Pinnix's age discrimination claim will therefore be denied.

### E. Conclusion

The court holds as a matter of law that Pinnix has failed to establish any claim for breach of an employment contract or for tortious interference with his employment relations by defendants Ervin and Rogers. Because of the ambiguous language of paragraph XII of his amended complaint, the court would prefer for Pinnix to clarify the nature of his claim for a violation of federal labor law. There existing material issues of genuine fact, summary judgment on Pinnix's age discrimination claim must be denied.

An appropriate order consistent with this opinion will be entered.

---

6. Section 8(a)(3) of the NLRA provides in relevant part:

(a) It shall be an unfair labor practice for an employer—

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

Section 301 of the LMRA provides in relevant part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.