# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00204-SCT

*JOHN E. FEDERINKO*

*v.*

*FORREST COUNTY, MISSISSIPPI, AND BUTCH BENEDICT, JR., CORONER*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2023 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| TRIAL COURT ATTORNEYS: | MICHAEL ADELMAN |
| | WILLIAM R. ALLEN |
| | KATELYN A. RILEY |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEYS FOR APPELLEES: | WILLIAM R. ALLEN |
| | KATELYN A. RILEY |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/07/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     John E. Federinko appeals the trial court's denial of his cross-motion for partial summary judgment and its grant of Forrest County's motion for summary judgment. Because Federinko failed to allege a tortious or negligent act, the trial court's order of dismissal is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 6, 2017, Alison Dawkins was discovered by her husband, Jon Dawkins,

hanging by her neck from an extension cord in their bedroom closet. Jon called 911. Law enforcement and other first responders were dispatched to the residence, where they found Dawkins's body in the master bedroom on the floor just outside the closet. Jon explained to law enforcement that he had taken Dawkins down from the hanging position and had laid her on the floor.

¶3. Paramedics determined that Dawkins was deceased and called the coroner. Forrest County Deputy Coroner Lisa Klem arrived and conducted an on-site investigation that included an examination of the scene, an examination of Dawkins's body, and multiple interviews. Deputy Coroner Klem also drew postmortem blood and vitreous fluids, obtained and reviewed Dawkins's medical records, and consulted with various medical doctors.

¶4. Dawkins's postmortem blood and vitreous fluids were sent to MedScreens, Inc., for testing. The toxicology report from STL Forensic Toxicology showed no presence of drugs in Dawkins's blood.

¶5. As a result of her investigation, Deputy Coroner Klem concluded that Dawkins's cause of death was suicide and that an autopsy was not necessary. Forrest County Coroner Douglas Eugene Benedict, Jr., agreed with Deputy Coroner Klem's conclusion regarding Dawkins's cause of death and her decision not to order an autopsy.

¶6. Federinko, Dawkins's father, disagreed with Deputy Coroner Klem's conclusion regarding Dawkins's cause of death. As a result, on February 14, 2018, at Federinko's expense, Dawkins's body was exhumed, and an autopsy was performed by Dr. Adel Shaker. According to the autopsy report, tissue from Dawkins's kidney, liver, and spleen were

collected and submitted for testing. The toxicology report from Axis Forensic Toxicology indicated that the following drugs were found in Dawkins's liver: amphetamines, cannabinoids, THC-COOH, analgesics, buprenorphine, norbuprenorphine, anticonvulsants, gabepentin, and multiple stimulants including caffeine, nicotine, and cotinine. Dr. Shaker concluded that Dawkins's cause of death was buprenorphine toxicity. He found that an investigation "should be performed to exclude a staged suicidal scene and to confirm if [Dawkins] was prescribed [b]uprenorphine." He explained that the marks on Dawkins's neck were inconsistent with suicide and that given the levels of buprenorphine and norbuprenorphine in her liver, Dawkins would not have had the cognitive and physical ability to hang herself.[1]

¶7. Federinko filed a complaint against Forrest County and Coroner Benedict under the Mississippi Tort Claims Act (MTCA) and alleged that Coroner Benedict and Deputy Coroner Klem "failed to require an autopsy, failed to obtain or attempt to obtain post-mortem blood, urine and/or vitreous fluids, allow[ed] the spoilation of evidence[,] and took insufficient photographs." Federinko asserted that "these duties are ministerial" and that as a result of Coroner Benedict and Deputy Coroner Klem's failure to perform these ministerial duties, "Dawkins's death was wrongfully classified as a suicide when i[n] fact it ha[d] strong elements that suggest her death was a homicide." Federinko claimed he "sustained severe mental anguish and extensive emotional pain," and he sought "full recovery under the

---

[1] Dr. Shaker was unable to opine how Dawkins's blood could have resulted in a negative toxicology report such as the one from STL Forensic Toxicology. Dr. Shaker simply stated that the STL Forensic Toxicology report was inconsistent with the Axis Forensic Toxicology report.

provisions of the [MTCA]." The parties later filed an agreed order of dismissal dismissing all claims against Coroner Benedict in his individual capacity.

¶8. Forrest County moved for summary judgment and argued it was entitled to immunity under Mississippi Code Section 11-46-9(1)(d) (Rev. 2019) "as the decisions made concerning [its] investigation, including its decisions regarding an autopsy, photographs, and evidence collection [we]re discretionary-functions." Federinko responded to Forrest County's motion and filed a cross-motion for partial summary judgment.

¶9. In his cross-motion, Federinko argued he was "entitled to partial summary judgment on the grounds that Forrest County failed to provide an autopsy for . . . Dawkins." Federinko asserted that the duty to conduct an autopsy was ministerial and required as a matter of law because it involved a death affecting the public interest. He further asserted that even assuming Forrest County's decision not to perform an autopsy was the exercise of a discretionary function, Forrest County was not entitled to discretionary-function immunity.

¶10. After a hearing on the motions, the trial court found no merit to Federinko's claims and therefore denied his cross-motion and granted Forrest County's motion for summary judgment. The trial court entered two orders: an order denying Federinko's cross-motion for partial summary judgment and an order of dismissal. Both orders were entered and filed on the same day. Federinko timely appealed.

¶11. On appeal, Federinko argues (1) the trial court erred by denying his cross-motion for partial summary judgment, and (2) the trial court erred by granting Forrest County's motion for summary judgment and dismissing the complaint. In response, Forrest County argues this

4

Court lacks jurisdiction over the trial court's order denying Federinko's cross-motion for partial summary judgment because it was not a final, appealable judgment.

## STANDARD OF REVIEW

¶12. "[O]n appeal, we review de novo the trial court's dismissal based on MTCA immunity." *Williams v. City of Batesville*, 313 So. 3d 479, 482 (Miss. 2021) (alteration in original) (internal quotation marks omitted) (quoting *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 181 (Miss. 2018)). "Additionally, when reviewing a grant of summary judgment, this Court employs a *de novo* standard of review." *Id.* (internal quotation marks omitted) (quoting *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1109 (Miss. 2015), *overruled by Wilcher*, 243 So. 3d 177)).

¶13. "As '[j]urisdiction is a question of law[,]' we review jurisdictional challenges de novo." *Curry v. Clemons*, 313 So. 3d 1032, 1032 (Miss. 2021) (alterations in original) (quoting *Tyson Breeders, Inc. v. Harrison*, 940 So. 2d 230, 232 (Miss. 2006)).

## DISCUSSION

*I. Jurisdiction*

¶14. Forrest County argues this Court lacks jurisdiction over the trial court's order denying Federinko's cross-motion for partial summary judgment because it was not a final, appealable judgment. This Court disagrees.

¶15. Under Mississippi Rule of Civil Procedure 54(b),

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed

5

determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.

Miss. R. Civ. P. 54(b). As the advisory committee notes to the rule explain:

> Rule 54(b) is designed to facilitate the entry of a final judgment upon one or more but fewer than all the claims or as to one or more but fewer than all the parties in an action involving multiple claims or multiple parties, so as to enable the non-prevailing party to perfect an appeal as of right of a final judgment. Absent a certification under Rule 54(b), any order in a multiple-party or multiple-claim action that does not dispose of the entire action is interlocutory, even it if appears to adjudicate a separable portion of the controversy.

Miss. R. Civ. P. 54 advisory comm. n.

¶16. Here, Forrest County filed a motion for summary judgment, and Federinko filed a cross-motion for partial summary judgment. The trial court ruled on both motions, denying Federinko's cross-motion for partial summary judgment, granting Forrest County's motion for summary judgment, and dismissing Federinko's complaint with prejudice. The cumulative effect of the trial court's ruling on the motions and its dismissal of the complaint "amounted to a final disposition regarding all issues in the case." *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 408 (Miss. 2018). Federinko timely filed his notice of appeal after the trial court entered its order of dismissal.

¶17. Because there has been a final disposition on all claims, this Court has jurisdiction. *See LaFontaine v. Holliday*, 110 So. 3d 785, 787 (Miss. 2013) ("Generally, a final judgment is one that adjudicates the merits of the controversy and settles all issues between all parties." (citing *Miss. Waste of Hancock Cnty., Inc. v. Bd. of Supervisors of Hancock Cnty.*, 818 So. 2d 326, 330 (Miss. 2001))).

6

## II. Summary Judgment

¶18. "The [MTCA] provides the exclusive civil remedy against a governmental entity for lawsuits seeking money damages arising out of tortious actions." *Moton v. City of Clarksdale*, 367 So. 3d 979, 983 (Miss. 2023) (citing Miss. Code Ann. § 11-46-1 to -7 (Rev. 2019)). Forrest County is a governmental entity. As such, the actions of its employees[2] acting within the course and scope of their employment fall under the MTCA. Miss. Code Ann. § 11-46-7 (Rev. 2019).

¶19. Under the MTCA, the Legislature waived "the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" Miss. Code Ann. § 11-46-5 (Rev. 2019). But the Legislature created exceptions, reinstating immunity for certain types of claims. Miss. Code Ann. § 11-46-9(1) (Rev. 2019). Relevant to this case is Section 11-46-9(1)(d), known as discretionary-function immunity.

¶20. In *Wilcher*, the Court discussed the problems we have had regarding the application of discretionary-function immunity. *Wilcher*, 243 So. 3d at 184. The Court noted that "what the Legislature intended as a shield—discretionary-function immunity under Section 11–46–9(1)(d)—[wa]s . . . being used as a sword." *Id.* Litigants were bringing actions "based solely on violations of statutes and/or local ordinances or regulations, which they

_____

[2] It is undisputed that Coroner Benedict and Deputy Coroner Klem are employees of Forrest County.

argue[d] impose[d] 'ministerial' duties."[3]  ***Id.***  Finding that "this approach [wa]s completely backwards," the Court explained:

> "Section 11-46-9(1) restores sovereign immunity." ***Simpson Cty. v. McElroy***, 82 So. 3d 621, 624 (Miss. Ct. App. 2011). "It does not in itself create duties." ***Id.*** Furthermore, regulations do not create causes of action, and the MTCA does not grant a right to recover based on a mere violation of statute or regulation. ***Taylor v. Delta Reg'l Med. Ctr.***, 186 So. 3d 384, 390-91 (Miss. Ct. App. 2016). "[T]he general rule is that 'a mere violation of a statute or regulation will not support a claim where no private cause of action exists.'" ***Id.*** (quoting ***Tunica Cty. v. Gray***, 13 So.3d 826, 829 (Miss. 2009)). Despite this, [the] analysis wrongly zeroe[d] in on applicable regulations and ordinances. And if a regulation was "ministerial," this Court began to presume that the alleged violation of that regulation or ordinance, itself, established a viable cause of action without even questioning if a claim would exist *without* the regulation.

***Wilcher***, 243 So. 3d at 184 (footnote omitted).

¶21.	To clear up the confusion, the Court returned to the traditional public-policy function test to determine when discretionary-function immunity applies.  ***Id.*** at 187.  Under the two-part test, "this Court first must ascertain whether the activity in question involved an element of choice or judgment[,]" ***id.*** (internal quotation marks omitted) (quoting ***Montgomery***, 80 So. 3d at 795), and "[i]f so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations." ***Id.*** (citing ***Montgomery***, 80 So. 3d at 795.  The Court emphasized that the traditional public-policy function test "presupposes the court has correctly identified 'the activity in question'—the allegedly

---

[3] "A duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment."  ***Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789, 795 (Miss. 2012) (citing ***Covington Cnty. Sch. Dist. v. Magee***, 29 So. 3d 1, 5 (Miss. 2010)), *overruled by* ***Brantley v. City of Horn Lake***, 152 So. 3d 1106, 1112 (Miss. 2014), *overruled by* ***Wilcher***, 243 So. 3d at 185.

tortious act giving rise to the claim." *Id.*

¶22.     Four years later, in ***Strickland ex rel. Strickland v. Rankin County School District***, the Court reiterated the importance of identifying the tortious act giving rise to the claim. ***Strickland ex rel. Strickland v. Rankin Cnty. Sch. Dist.***, 341 So. 3d 941, 945 (Miss. 2022). In ***Strickland***, "[t]he Court of Appeals spent much time debating, based on the allegations before it, the proper way to apply the two-part public-policy function test reestablished in ***Wilcher***[.]" *Id.* at 945.  But on certiorari, this Court found the plaintiff failed to allege any tortious activity, making the question of discretionary-function immunity moot.  *Id.* at 946. The Court stated, "the trial court's application of the public-policy function test to determine if a governmental entity enjoys discretionary-function immunity comes *after* an important pre-test step—namely, identifying 'the allegedly tortious act giving rise to the claim.'" *Id.* at 945 (quoting ***Wilcher***, 243 So. 3d at 187).

¶23.     Here, like the litigants in the past, Federinko brings this action "based solely on violations of statutes and/or local ordinances or regulations, which [he] argue[s] impose 'ministerial' duties." ***Wilcher***, 243 So. 3d at 184.  But such an approach "improperly turns regulations into causes of action, and is not based on the text of [the MTCA]." *Id.*

¶24.     Notably, both Federinko and Forrest County *assume* that Forrest County acted negligently and argue only whether discretionary-function immunity applies under the two-part public-policy-function test reestablished in ***Wilcher***.  In other words, neither Federinko nor Forrest County address whether Federinko's claims constitute negligence giving rise to a tort claim under the MTCA.

¶25. As the title suggests, in order for the MTCA to apply, a negligent or tortious act must be alleged. "The elements of negligence include 'duty, breach, causation, and injury.'" *Darling Ingredients Inc. v. Moore*, 337 So. 3d 214, 216 (Miss. 2022) (quoting *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017)). "Duty and breach of duty . . . are essential to finding negligence and [therefore,] must be demonstrated first." *Id.* (second alteration in original) (internal quotation mark omitted) (quoting *Sanderson Farms, Inc.*, 212 So. 3d at 76).

¶26. Here, the allegedly tortious act giving rise to Federinko's claims centers around Forrest County's investigation into the cause and manner of Dawkins's death. Specifically, Federinko asserts that Forrest County failed to conduct an autopsy and failed to obtain or attempt to obtain postmortem blood, urine, and/or vitreous fluids. Federinko argues that as a result of these failures, Dawkins's cause of death was "wrongfully classified as a suicide when i[n] fact it has strong elements that suggest her death was a homicide."

### A. Autopsy

¶27. Federinko argues he is "entitled to partial summary judgment on the basis that Forrest County failed to provide an autopsy for . . . Dawkins." He claims that under Mississippi Code Section 41-61-63(2)(a) (Rev. 2023), Forrest County had a "ministerial statutory" duty to conduct an autopsy because Dawkins's death involved a death affecting the public interest. We disagree.

¶28. Under Section 41-61-63(2)(a), the medical examiner shall "[u]pon receipt of notification of a death affecting the public interest, make inquiries regarding the cause and

10

manner of death[.]" Nothing in Section 41-61-63(2)(a) imposes a duty, ministerial, statutory, or otherwise, on Forrest County to conduct an autopsy. Instead, under Mississippi Code Section 41-61-65(1) (Rev. 2023), the decision to conduct an autopsy is left to "the opinion of the medical examiner investigating the case[.]" Miss. Code Ann. § 41-61-65(1); *see also Sanders v. Chamblee*, 819 So. 2d 1275, 1278 (Miss. 2002) (Section 41-61-65(1) "specifically leaves the decision as to whether an autopsy should be made to the discretion of the medical examiner investigating the case and the State Medical Examiner.").

### B. *Postmortem Blood, Urine, and/or Vitreous Fluids*

¶29. Federinko further asserts Forrest County had a "ministerial statutory" duty to obtain or attempt to obtain postmortem blood, urine, and/or vitreous fluids under Mississippi Code Section 41-61-63(2)(d) (Rev. 2023). He argues Forrest County is not entitled to summary judgment because a genuine issue of material fact exists as to (1) whether Deputy Coroner Klem actually obtained Dawkins's blood, and (2) whether Deputy Coroner Klem's delay in obtaining blood and other vitreous fluids compromised the quality of the fluids recovered from Dawkins's body. We disagree.

¶30. Under Section 41-61-63(2)(d), medical examiners shall "[i]n all investigations of deaths affecting the public interest where an autopsy will not be performed, obtain or attempt to obtain postmortem blood, urine and/or vitreous fluids." Miss. Code Ann. § 41-61-63(2)(d). But while a statutory duty may exist regarding postmortem blood and fluids, there is no evidence that Forrest County breached that duty.

¶31. The record reflects that Dawkins's postmortem blood and vitreous fluids were drawn

11

July 8, two days after her death. Specifically, the record reflects that one tube of vitreous fluids and two tubes of blood were obtained by Deputy Coroner Klem and submitted to MedScreens, Inc., for testing. The toxicology report from STL Forensic Toxicology confirms that Dawkins's blood was received and tested.

¶32. Federinko acknowledged during his deposition that a blood sample was taken by Deputy Coroner Klem, but he asserts Deputy Coroner Klem "sent someone else's blood" for testing. But there is nothing to support Federinko's assertion that the blood drawn and sent for testing was not Dawkins's blood. Even Dr. Shaker testified that he had "no clue to support [Federinko's] opinion or his suspicion" that the blood obtained and sent for testing was not Dawkins's blood. In fact, Dr. Shaker testified that he had no complaints about the Forrest County coroners, specifically stating, "I'm not here to say anything about the coroner or the deputy coroner . . . I worked with all those coroners in Mississippi, and I have no doubt about them personally. . . [T]hat's the father."

¶33. Additionally, Federinko asserts Forrest County's delay in obtaining Dawkins's blood and/or vitreous fluids compromised the quality. But nothing requires Forrest County to obtain postmortem blood and/or vitreous fluids within a certain time period. Instead, Section 41-61-63(2)(d) simply requires that postmortem blood and/or vitreous fluids be obtained or attempted to be obtained "[i]n all investigations of deaths affecting the public interest where an autopsy will not be performed[.]" Miss. Code Ann. § 41-61-63(2)(d). And the record reflects that Forrest County obtained Dawkins's postmortem blood and vitreous fluids.

        C.     *Cause of Death*

12

¶34. Federinko also argues Forrest County is not entitled to summary judgment because a genuine issue of material fact exists as to Dawkins's cause of death and whether Dawkins was able to execute her suicide. We disagree. Neither Dawkins's cause of death nor her ability to execute a suicide is material to the overall issue.

¶35. "The presence of fact issues in the record does not *per se* entitle a party to avoid summary judgment." *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985). "The court must be convinced that the factual issue is a *material* one, one that matters in an outcome determinative sense." *Id.* "[T]he existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the *material* issues of fact." *Id.* Importantly, a "fact is neither material nor genuinely contested . . . merely because one party proclaims it so." *Brown Lakeland Props. v. Renasant Bank*, 243 So. 3d 784, 791 (Miss. Ct. App. 2018) (alteration in original) (internal quotation mark omitted) (quoting *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1167 (Miss. Ct. App. 2007)).

¶36. Here, even if Federinko's suspicions are correct and Dawkins's death was not the result of suicide, that does not affect the fact that Forrest County had no duty to perform an autopsy and did not breach any duty to obtain or attempt to obtain postmortem blood and fluids. Simply because Federinko disagrees with the results of Forrest County's investigation does not amount to a tort claim upon which to apply the MTCA.

## CONCLUSION

¶37. Federinko's alleged actions of Forrest County "do not establish any triable claim for negligence." *Strickland*, 341 So. 3d at 943. As a result, Federinko fails to allege a tort

13

claim.

> Without any allegedly tortious activity, there is nothing to which to apply the two-part, public-policy function test to determine if [Forrest County] is immune from liability. Stated differently, because [Federinko] alleged no tort, the question of discretionary-function immunity is *moot*. That's why there is simply no reason to address [Forrest County]'s supposed legislatively conferred immunity for actions that do not otherwise give rise to a private cause of action.

*Id.* at 946. Consequently, the trial court's denial of Federinko's cross-motion for partial summary judgment and its grant of Forrest County's motion for summary judgment and order of dismissal are affirmed.

¶38. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**